975 F.2d 1061
 UNITED STATES of America, Plaintiff-Appellee,
v.
David ELLIS, a/k/a Tree, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernadell MANAGO, a/k/a Heaven, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne JOHNSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
Wayne JOHNSON, Defendant-Appellee.
 Nos. 91-5620, 91-5665, 91-5709 and 91-5718.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 5, 1992.
Decided Sept. 17, 1992.
As Amended Nov. 9, 1992.
 
 Jack Benjamin Crawley, Jr., Raleigh, N.C., argued for defendants-appellants (Edwin N. Kearns, Raleigh, N.C., on brief), for defendant-appellant Ellis (Vernon F. Daughtridge, Wilson, N.C., on brief), for defendant-appellant Johnson.
 John Samuel Bowler, Asst. U.S. Atty., Raleigh, N.C., argued (Margaret Person Currin, U.S. Atty., on brief), for plaintiff-appellee.
 Before MURNAGHAN and HAMILTON, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 MURNAGHAN, Circuit Judge:
 
 
 1
 The instant consolidated appeal challenges the sentences imposed by the United States District Court for the Eastern District of North Carolina upon several co-conspirators involved in the distribution of crack cocaine. Two of the defendants, David Ellis, a/k/a Tree ("Ellis"), and Bernadell Manago, a/k/a Heaven ("Manago"), pled guilty to conspiracy to possess crack cocaine with the intent to distribute it in violation of 21 U.S.C. § 846. The other defendant, Wayne Johnson ("Johnson"), pled guilty to possession with intent to distribute crack cocaine. The central issue in the consolidated appeal, as stated by the district court, is whether "the prosecutorial charging decisions of the United States Attorney, which have produced extremely disparate sentences with regard to the defendants involved in the instant offense constitute the basis for a downward departure" under section 5K2.0 of the United States Sentencing Guidelines ("U.S.S.G."). Because we conclude that the district court impermissibly departed downward based upon the disparate sentences of coconspirators, we vacate Johnson's sentence and remand for resentencing. We affirm the sentences of the other co-conspirators.
 
 I.
 
 2
 The instant appeal stems from the arrest and prosecution of certain members of a crack cocaine ring operating in Raleigh, North Carolina. Each of the co-conspirators entered a guilty plea to various offenses, so no trial was held. However, the district court adopted the Offense Conduct section of each of the pre-sentence reports as the operative facts. Essentially, crack cocaine was being imported from New York into the Raleigh area and then distributed in the Walnut Terrace housing project. The district court described the various co-conspirators' roles and levels of culpability as follows:
 
 
 3
 1. Toney E. Bloodworth ("Bloodworth") was the ringleader of this crack cocaine distribution network. He was the "brains" of the outfit and also its disciplinarian. He transported drugs from New York to North Carolina. On at least one occasion he assaulted Bernadell Manago to ensure her compliance with his directives.
 
 
 4
 2. Next in degree of culpability was Wayne Johnson who directed the "retail" distribution of drugs, and the collection and handling of the cash proceeds therefrom. Apparently, he exercised some supervision over Ellis and Franklin.
 
 
 5
 3. Following Johnson was Cedric Franklin ("Franklin"). As Bloodworth's lieutenant he transported drugs interstate. In North Carolina, he made unsupervised deliveries of drugs, and associated firearms with his drug dealings.
 
 
 6
 4. David Ellis also was Bloodworth's lieutenant, transporting drugs interstate, and making unsupervised drug deliveries on his behalf. Ellis apparently did not associate himself with firearms, and hence is perceived to be less culpable than Franklin.
 
 
 7
 5. Bernadell Manago was more or less a "mule," obtaining drugs in New York and transporting them interstate under Bloodworth's direction. She was the subject of an assault by Bloodworth, committed in order to ensure her continuing cooperation.
 
 
 8
 The central problem in the instant case stems from the district court's perception that the United States Attorney engaged in prosecutorial charging decisions which produced extremely disparate sentences with respect to the defendants, their roles in the instant offense, and their levels of culpability. On December 6, 1990, a criminal complaint was filed charging Bloodworth, Johnson, Franklin, Ellis and Manago with conspiring to possess with the intent to distribute cocaine base "crack," a Schedule II controlled substance, in violation of 21 U.S.C. § 846. In a separate complaint, the four co-conspirators (all save Ellis) were charged with using and carrying firearms during and in relation to drug trafficking in violation of 18 U.S.C. § 924(c).
 
 
 9
 The United States Attorney, believing that there were difficulties in the case which was developed by the Raleigh Police and presented as a complete case to him to prosecute (and which was purportedly rife with evidentiary problems), negotiated a pre-indictment agreement with the ring-leader, Bloodworth, under which Bloodworth provided evidence against his ring members and pled guilty to the use of a firearm in relation to drug trafficking, in violation of 18 U.S.C. § 924(c)(1), and to interstate travel to facilitate an unlawful activity, in violation of 18 U.S.C. § 1952(a). Bloodworth was the only defendant who obtained private counsel. As the benefit of his pre-indictment deal, the Guideline range to which he was exposed was reduced from 360 months to life, to 60 to 120 months. Furthermore, the Government made a motion for a substantial assistance reduction in Bloodworth's sentence which the court approved, sentencing Bloodworth to merely 108 months imprisonment.
 
 
 10
 Franklin also made a pre-indictment deal with the Government in which he pled guilty to the use of a firearm in relation to drug trafficking, which carried a mandatory five year sentence, which the district court duly imposed. Both Franklin and Bloodworth were the first of the co-conspirators to be sentenced, such sentencing occurring on June 10, 1991.
 
 
 11
 However, the other co-conspirators, Johnson, Ellis, and Manago, who are the appellants in the instant case, did not receive favorable treatment from the Government. According to the Government, these defendants refused to make a deal with the United States Attorney's office until Bloodworth and Franklin turned evidence on them.[1] As a result, these defendants, the least culpable of the co-conspirators, made no pre-indictment deals and instead were indicted on charges of conspiracy to possess and distribute crack cocaine (alleged co-conspirators included Bloodworth and Franklin who pled guilty prior to indictment), possession with intent to distribute crack cocaine, and two counts of the use of a firearm in relation to drug trafficking.
 
 
 12
 Following indictment, Johnson pled guilty to possession with intent to distribute crack cocaine, which carries a statutory maximum sentence of twenty years. Ellis and Manago pled guilty to conspiracy to distribute crack cocaine, which carries a statutory minimum of ten years and a statutory maximum of life imprisonment. The other charges were dismissed.
 
 
 13
 Ellis was the third co-conspirator to be sentenced. He came for sentencing on July 8, 1991. At the sentencing hearing, the Government introduced evidence that the amount of cocaine involved in the conspiracy was 1.6 kilograms rather than the 4.4 grams alleged in the indictments. Ellis testified to facts supporting a finding that 1.6 kilograms of cocaine had been involved. Because no motion was made for substantial assistance for Ellis, the court was bound by the Guidelines to sentence Ellis in the range of 210 to 262 months. The district court at that time did not depart downward because of the disparate sentences involved among the co-conspirators, and simply imposed the lowest end of the guideline range, 210 months.
 
 
 14
 On August 26, 1991, Manago became the fourth co-conspirator to be sentenced. The United States Attorney moved for a departure based upon Manago's substantial assistance and her defense counsel pointed out that because Manago had been assaulted by Bloodworth to ensure her continued participation in the conspiracy, she was entitled to a downward departure for reasons of duress and coercion. Based upon the two departures mentioned above, the district court imposed a sentence of 137 months. However, the court did not depart downward based upon the disparity among the sentences of the co-conspirators.
 
 
 15
 Finally, on November 25, 1991, Johnson was sentenced. At which time, the district court concluded that it could depart downward pursuant to section 5K2.0 of the Guidelines because the prosecutorial charging decisions of the United States Attorney, which produced extremely disparate sentences with respect to the culpability of the co-conspirators involved in the instant case, amounted to a mitigating factor not taken into consideration by the Commission in formulating the Guidelines. At this time, the district court also respectfully requested that, if his departure was upheld on appeal, he could have an opportunity to resentence Manago and Ellis because he had failed to perceive at the time that he sentenced them that he could depart downward based upon the United States Attorney's charging decisions.
 
 
 16
 The Government appealed Johnson's sentence, arguing that the district court illegally departed from the Guideline range. Ellis and Manago also appealed from their sentences imposed, arguing that the court erred in failing to perceive that it had the ability to depart downward, as it did in Johnson's case, based upon the prosecutorial charging decisions which resulted in disparate sentencing. Ellis also has argued that he failed to get notice of the Government's objections to the pre-sentence report as required by North Carolina local rules. Johnson has cross-appealed, arguing that since he only pled guilty to possession with intent to distribute (and not to the conspiracy charge) that the district court erred in attributing to him the 1.6 kilograms of cocaine determined to be involved in the conspiracy, rather than the 4.4 grams specified in the possession charge to which he pled guilty.
 
 
 17
 Because we conclude that the district court impermissibly departed downward in sentencing Johnson, we vacate Johnson's sentence and remand for resentencing. We affirm the sentences of Manago and Ellis.
 
 II.
 
 18
 A. Downward Departure Pursuant to § 5K2.0 For Prosecutorial Decisions Creating Disparate Sentences Among Co-Conspirators
 
 
 19
 First, the Government has appealed Johnson's sentence, arguing that the district court impermissibly departed downward pursuant to U.S.S.G. § 5K2.0 because prosecutorial decisions created disparate sentences among co-conspirators. The Government has maintained that the district court was essentially second-guessing prosecutorial decisions, that as a policy matter such second-guessing should not be tolerated, and that the court had no authority to depart downward on the basis that it gave in sentencing Johnson.
 
 
 20
 Johnson has argued that the district court had the discretion to depart downward in the manner that it did. Ellis and Manago have argued that the district court erred in sentencing them because it failed to perceive that it had the discretion to depart downward as it ultimately did in sentencing Johnson. Before we can reach the issue raised by Ellis and Manago, we must determine whether a district court can depart downward pursuant to U.S.S.G. § 5K2.0 on the basis that the Government's charging decisions, which result in the disparity in sentences awarded other co-conspirators, constitutes a mitigating circumstance of a kind or degree not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.
 
 
 21
 In reviewing departures, we must first determine whether the sentence was imposed in violation of law or as a result of an incorrect application of the Guidelines. 18 U.S.C. § 3742(f)(1). We use a standard similar to de novo when reviewing the district court's decision to depart. United States v. Summers, 893 F.2d 63, 66 (4th Cir.1990). In reviewing a factor that the district court identified as a mitigating circumstance, we must determine whether the circumstance identified is of sufficient importance to justify a departure, using a clearly erroneous standard of review. United States v. Goff, 907 F.2d 1441, 1445 (4th Cir.1990).
 
 
 22
 We have previously held that a district court may not depart upward merely because of disparate sentencing of co-defendants. See United States v. McKenley, 895 F.2d 184, 187-88 (4th Cir.1990). In United States v. Goff, 907 F.2d 1441, 1446-47 (4th Cir.1990), we held that the district court erred in departing downward based upon the disparity of sentences among co-defendants when there were "significant dissimilarities" between the co-defendants. We have, however, never squarely addressed the issue of whether a departure based upon the disparity of sentences among co-defendants is inherently impermissible under the Guidelines.
 
 
 23
 Several courts have concluded that a district court may not depart downward based upon the disparity of sentences among co-defendants or co-conspirators. See, e.g., United States v. Monroe, 943 F.2d 1007, 1017 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992); United States v. Wogan, 938 F.2d 1446, 1448-49 (1st Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991); United States v. Joyner, 924 F.2d 454, 460-61 (2nd Cir.1991).
 
 
 24
 We conclude that, absent proof of actual prosecutorial misconduct, which is not the case here,[2] a district court may not depart downward based upon the disparity of sentences among co-defendants. Because we determine that the district court impermissibly departed downward in sentencing Johnson, we remand for resentencing. See Williams v. United States, --- U.S. ----, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).
 
 
 25
 B. Ellis' Failure to Receive a Copy of Government's Objections to his Pre-sentence Report, as Required by North Carolina Local Rules
 
 
 26
 Ellis has contended that his sentence should be vacated because he failed to receive a copy of the Government's objections to his pre-sentence report as required by Local Rule 50.03 of the United States District Court for the Eastern District of North Carolina. Ellis has failed to argue exactly how he was prejudiced by the failure to receive such objections, but it appears that the only ground that even arguably shows prejudice is that the objections substantially increased the base offense level to which Ellis was exposed by significantly increasing the amount of drugs attributable to him.
 
 
 27
 The Government has pointed out that counsel for Ellis received subsequent correspondence prior to trial which alerted him (or should have alerted him) to the Government's objections to the pre-sentence report. Furthermore, the Government points out that counsel for Ellis received a detailed accounting of the Government's objections to the pre-sentence report, contained in the final sentence report, more than two weeks prior to sentencing.
 
 
 28
 In light of the fact that counsel for Ellis received such notice of the Government's objections well before sentencing, it seems that the Local Rule was substantially complied with or that the failure technically to send the objections was harmless error in the instant case. See United States v. Bachynsky, 949 F.2d 722 (5th Cir.1991) (holding that notice of Government's position contained in final presentence report provided one week prior to sentencing was adequate).
 
 
 29
 C. Amount of Drugs Attributable to Co-conspirators For Sentencing Purposes
 
 
 30
 The appellants have argued that the district court erred in attributing to them, for sentencing purposes, the 1.6 kilograms of cocaine that the court determined to have been involved in the conspiracy. However, in determining the amount of drugs involved in a conspiracy, the Government need only prove the quantities by a preponderance of the evidence. United States v. Powell, 886 F.2d 81, 85 (4th Cir.1989), cert. denied, 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990). Furthermore, in determining the offense level for drug crimes, "all quantities of drugs that were part of the same course of conduct or part of the same common scheme or plan" are to be included. U.S.S.G. § 1B1.3(a)(2). In the case of a criminal conspiracy, the conduct for which the defendant is responsible "includes conduct of others in furtherance of the execution of jointly undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n.1). In the instant case, the evidence clearly supports the district court's conclusion that 1.6 kilograms of cocaine was attributable to the co-conspirators for purposes of sentencing because it was the amount involved in the conspiracy and was criminal activity reasonably foreseeable to the co-conspirators.
 
 
 31
 Furthermore, sufficient evidence existed to support the district court's conclusion that 1.6 kilograms of cocaine were involved in the conspiracy. Detective Overman testified to such an amount. Most damning was the testimony of Ellis, who conceded during cross-examination to sales of $2,500 per day (with one gram of cocaine selling for $100), seven days a week, during a five month period. Such sales figures would yield an even greater quantity of cocaine measuring 3.5 kilograms. Because sufficient evidence existed to support 1.6 kilograms of cocaine, the district court did not err in sentencing the appellants based upon such amount. Powell, 886 F.2d at 85.
 
 
 32
 Johnson also has argued that the district court erred in sentencing him based upon the 1.6 kilograms of cocaine involved in the conspiracy because he only pled guilty to possession with intent to distribute 4.4 grams of cocaine, and not to the conspiracy charges. Johnson has pointed out that the Government dismissed the conspiracy charge against him when he pled guilty to the possession count. Because a district court can, in sentencing, consider quantities of cocaine involved in a conspiracy even when the defendant pled guilty only to possession with intent to distribute and even though the quantity expressed in the count to which he pled guilty was smaller, we find no error. See United States v. Williams, 880 F.2d 804, 805-06 (4th Cir.1989). Cf. United States v. McNatt, 931 F.2d 251 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 879, 116 L.Ed.2d 783 (1992).
 
 
 33
 In summary, because we conclude that the district court erred in sentencing Johnson by departing downward based upon disparate sentences of co-conspirators, we vacate Johnson's sentence and remand for resentencing. Finding no reversible error, we affirm the sentences imposed on Ellis and Manago. Accordingly, the district court's decision is
 
 
 34
 VACATED AND REMANDED IN PART, AND AFFIRMED IN PART.
 
 
 
 [1]
 According to the Government, it did not want to be in the position of making the first bargain with the ring-leader, Bloodworth, in which he would receive a reduced sentence by turning evidence against his underlings. The Government states that it repeatedly, albeit unsuccessfully, approached counsel for Franklin and Manago, stating its concerns that Bloodworth would be the first to cooperate. Only on the eve of the grand jury investigation, after Franklin and Manago had persisted in their silence, did Bloodworth and Franklin agree to cooperate almost simultaneously
 
 
 [2]
 While we sympathize with the district court's feeling that the disparity in sentences of some co-conspirators as compared to others seemed inequitable, the attempted solution of a downward departure, where no prosecutorial misconduct has been shown to exist, inevitably amounts to an exercise reminiscent of the adage that two wrongs do not make a right. Viewed alone, sentences for Johnson, Ellis and Manago complied with the sentencing guidelines. The fact that Bloodworth and Franklin received sentences presumably too light is not a reason to justify expanding the error to apply it in Johnson's, Ellis' and Manago's cases