989 F.2d 495
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Patten COLE, Defendant-Appellant.
 No. 92-5182.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 1, 1992.
Decided March 1, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Clyde H. Hamilton, District Judge. (CR-90-203).
 ARGUED: James Hanjo Lengel, Holler, Olive, Lengel & Merry, Columbia, SC, for defendant-appellant.
 Gregory Poole Harris, Asst. U.S. Atty., Columbia, SC, for plaintiff-appellee.
 ON BRIEF: John S. Simmons, U.S. Atty., Robin Reid Tidwell, Law Clerk, Columbia, SC, for plaintiff-appellee.
 D.S.C.
 AFFIRMED.
 Before MURNAGHAN, LUTTIG and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 David Cole, the appellant, was convicted by a federal jury on one count of conspiracy and multiple counts of bank fraud and money laundering. Following a sentencing hearing, the district judge sentenced Cole to a period of incarceration of 65 months and to a period of supervised release and also assessed a fine against him. On appeal, Cole challenges the sentence imposed by the district court.
 
 
 2
 Cole was convicted for his participation in a cashier's check kiting and loan kiting scheme which resulted in the issuance of over 82 fraudulent loans and 49 fraudulent cashier's checks. The scheme was initiated in October of 1986 when Angela Swartz, a vice president and loan officer at Republic National Bank in Columbia, South Carolina, issued a cashier's check to Weldon Waites, a local businessman, so that he might pay off a loan. The scheme to defraud Republic continued through November of 1989, at which time Swartz' loan portfolio was audited for loan authenticity. As a result of the audit, Swartz and Waites were questioned. Both gave statements implicating themselves as well as Cole in the fraudulent scheme.
 
 
 3
 During 1987, David Cole was an attorney practicing in Columbia, South Carolina. Waites was one of his clients. Waites and Swartz first informed Cole of the bank fraud at Republic during a meeting in the fall of 1987. Soon thereafter, he moved to Maryland where he was retained by Montgomery Financial Corporation as an attorney to supervise lending practices. He remained in Maryland until April of 1988, when he moved back to Columbia to resume his private law practice. He shared office space, equipment, and support staff with Waites.
 
 
 4
 In May of 1988, Cole began accepting fraudulent loan proceeds checks from Waites and Swartz. He deposited some of the loan proceeds checks into his attorney escrow account. He then disbursed the proceeds to pay the outstanding fraudulent loans and some of Waites' debts. Between May of 1988 and October of 1989, Cole accepted eleven cashier's checks and disbursed their proceeds. In disbursing the proceeds, he made payments on 31 of the loans which had been acquired fraudulently by the conspirators associated in the Republic bank fraud scheme. Those loans were worth a total amount of $929,000. In addition to the 31 loans he made payments on, Cole was aware of the existence of 20 other fraudulent loans at Republic.
 
 
 5
 Prior to sentencing, Cole filed a motion for downward departure and an objection to the computation establishing the value of the funds applied under U.S.S.G. § 2S1.1B(2)(G). After an evidentiary hearing, the district court denied both motions.
 
 
 6
 As to the motions for downward departure, the district judge assumed without deciding that he had the discretion to depart, and determined a departure based on the positions set forth by Cole was not warranted. The district court further ruled that the value of the funds involved in the money laundering scheme was $3,762,741.00; but, only the amount stipulated to by the government--$2,785,196.00--was attributed to Cole. That amount resulted in a six level enhancement of Cole's base offense level.
 
 
 7
 Cole asks us to review the district court's failure to grant his two separate motions for downward departure in his sentence. However, the Fourth Circuit, following the rationale adopted by seven other United States courts of appeal, has held that a defendant cannot appeal a refusal to depart downward. United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 65 (1990). The court in Bayerle allowed for only one exception to the general prohibition:
 
 
 8
 Section 3742(a)(1) [of the Sentencing Guidelines] provides for review of a sentence "imposed in violation of law." A defendant can appeal if this very narrow situation arises. Thus, if the refusal to depart downward were based on the district court's mistaken view that it lacked the authority to depart, the defendant can appeal.
 
 
 9
 Bayerle, 898 F.2d at 31 (citations omitted).
 
 
 10
 In the present case, the record indicates that the district court assumed that it could depart but refused to do so because it concluded that the evidence did not justify a departure. At sentencing, the district court considered Cole's motion for downward departure based on the theory that Congress did not intend for his type of conduct to constitute a crime under the Money Laundering Control Act of 1986. Cole argued that his case did not fall within the " 'heartland', a set of typical cases embodying the conduct that [the money laundering] guideline describes" and therefore a downward departure was appropriate. U.S.S.G., Ch. 1, Pt. A, 4(b).[1] In ruling on the argument, the district court fully considered and rebutted Cole's trial attorney's arguments. The district judge denied the motion, concluding that "I don't feel I'd be justified in exercising that discretion" requested by Cole.
 
 
 11
 Cole's second motion for a downward departure revolved around Cole's service to his country and general good citizenship. Trial counsel contended that Cole's offense level should be decreased to reflect the fact that his crime was an aberration in an otherwise unblemished record. Such a downward departure is not specified in the Sentencing Guidelines, but Cole argued it might be justified under § 3553(b)'s blanket allowance for those circumstances not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The district court, however, concluded that, in light of the language and examples in the Guidelines, the factors presented by Cole were not enough to justify a downward departure.
 
 
 12
 As the district court gave full and fair consideration to Cole's motions for downward departure, we may not review on appeal the district court's decisions.
 
 
 13
 Cole challenges the district court's decision, pursuant to U.S.S.G. § 1B1.3(a)(1), to enhance his sentence six levels based on the amount of money laundered in the scheme. Section 1B1.3 describes what conduct is relevant in determining the guideline range for a defendant. In determining the relevant conduct under § 1B1.3 in a money laundering case, the court must use the table set forth in § 2S1.1. That table calculates the levels of enhancement based on the value of the money laundered.
 
 
 14
 The district court ruled that $3,762,421 was the value of the money laundered in the money laundering scheme. Pursuant to the Government's request, the district court ultimately set the value at $2,785,196,[2] which required a six level enhancement in Cole's guideline range.
 
 
 15
 While Cole concedes that he should be held accountable for the criminal conduct in furtherance of the conspiracy which was either known to him or reasonably foreseeable by him,[3] he contends that "[i]t cannot be fairly said here that [he] could reasonably have foreseen the full extent of Waites' and Swartz' multi-conspiratorial activities," especially those activities initiated prior to his entry into the conspiracy, and therefore the sentencing court erred in using the entire amount of the scheme for the purposes of establishing relevant conduct.[4] However, the district court's determination of what Cole knew or could have reasonably foreseen was not clearly erroneous in light of the evidence presented.
 
 
 16
 The government provided sufficient evidence to support the district judge's conclusion. The government proved that Cole initially was informed of the fraudulent scheme in the fall of 1987, that he directly participated in the conspiracy, that he shared office space and support staff with a co-conspirator, that he was very well-informed about bank lending practices, and that he aided his co-conspirators in their attempt to escape detection. Moreover, Cole's illegal actions in furtherance of the conspiracy were linked to fraudulent actions taken earlier.
 
 
 17
 Finally, the Fifth Circuit has concluded, in light of the Guidelines, "that a defendant can be held accountable for acts of a conspiracy prior to his joining 'if those acts were ... reasonably foreseeable in connection with ... the criminal activity he agreed to jointly undertake....' " United States v. Richardson, 925 F.2d 112, 116 (5th Cir.1991), cert. denied, --- U.S. ----, 111 S.Ct. 2868 (1991) (quoting U.S.S.G. § 1B1.3, comment (n. 1(e)). In the present case, the district judge did not commit clear error by deciding that the activities of the conspiracy prior to Cole's entry were reasonably foreseeable to Cole.
 
 
 18
 In light of the foregoing, the sentence determined by the district court is
 
 
 19
 AFFIRMED.
 
 
 20
 LUTTIG, Circuit Judge, concurring in the judgment:
 
 
 21
 I agree that Cole's sentence should be affirmed, but I do not join the opinion for the court because, in my view, the majority misreads the transcript of the proceeding below and, as a result, fails to address appellant's principal argument.
 
 
 22
 Cole contended before the district court that the fraudulent conduct underlying his money laundering conviction did not fall within the "heartland" of activity proscribed by the Money Laundering Control Act, 18 U.S.C. § 1956, which he suggested was "organized crime and drug conspiracies," J.A. at 162. He argued that he should therefore be sentenced under the more lenient guideline for bank fraud, rather than under the money laundering guideline. According to the majority, in response to this argument, "the district court assumed that it could depart but refused to do so because it concluded that the evidence did not justify a departure." Ante at 4 (emphasis added). In fact, the record could hardly be clearer that the district court assumed that it did not have the discretion to sentence Cole for bank fraud instead of for money laundering. The court stated in language inexplicably omitted from the majority's quotation of the transcript that "to the extent that I have that discretion, and I don't think that I do, I don't feel I'd be justified in exercising that discretion." J.A. at 164 (emphasis added).
 
 
 23
 If the district court's direct statement that it did not believe that it had the discretion to depart on the ground urged by Cole were not sufficient, the court's response to Cole's "heartland" argument leaves no doubt that it believed that it lacked such authority. Summarizing its holding, the court stated that "I must say that I have to disagree with you" "that this particular offense or offenses for which the defendant stands convicted were [not] intended to be within the heartland of the money laundering statute." Id. at 164-65.
 
 
 24
 Given that the district court clearly believed that it lacked the authority to sentence on the ground suggested by Cole, I would proceed to the question of whether the court was mistaken in this belief--the question that the majority avoids as a consequence of its misreading of the record. As to this question, I believe that the district court was correct that it lacked the authority to depart.
 
 
 25
 U.S.S.G. Ch. 1, Pt.A 4(b) by its terms permits departure from the prescribed sentencing range only "where conduct significantly differs from the norm" of conduct described by the particular substantive guideline. There is little question, as the district court recognized, see J.A. at 162-65, that the conduct for which Cole was convicted not only comes within the plain language of the money laundering statute, see 18 U.S.C. § 1956(a)(1), (c)(7)(D), but was within the full contemplation of the Congress when it enacted that statute, see, e.g., S.Rep. No. 433, 99th Cong., 2d Sess. 13 (1986). As such, this conduct falls within the so-called "heartland" of the money laundering offense, no less so than do money laundering offenses by drug conspiracies and organized crime rings.
 
 
 26
 Because the district court believed--but correctly--that it was without authority to depart under the circumstances of this case, I would dismiss the appeal on the reasoning of this court's decision in United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 111 S.Ct. 65 (1990).
 
 
 
 [1]
 The section reads in relevant part:
 The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.
 
 
 [2]
 Prior to the hearing, the Government stipulated that the value of the funds to be used in determining relevant conduct for Cole should be $2,785,196. That was the amount attributed to Cole's co-defendants during their sentencing hearings
 
 
 [3]
 See U.S.S.G. § 1B1.3(a); United States v. Willard, 908 F.2d 780 (4th Cir.1990)
 
 
 [4]
 As an aside, Cole makes the argument that his sentence is unfair because it is greater than that given to one of his co-conspirators who was more closely involved in the crime. However, the Fourth Circuit has concluded that such an argument, standing on its own, has no legal merit. United States v. Ellis, 975 F.2d 1061 (4th Cir.1992)