**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4034

ALBERT SHAW NELSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4741

ALBERT SHAW NELSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                                            No. 97-4755
ELMORE MONCRIEFT, a/k/a Mo, a/k/a
El Mo,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Orangeburg.
Charles E. Simons, Jr., Senior District Judge.
(CR-95-333)

Submitted: June 16, 1998

Decided: October 26, 1998

Before WIDENER and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jerry M. Screen, Columbia, South Carolina; Debra Y. Chapman,
Columbia, South Carolina, for Appellants. J. Rene Josey, United
States Attorney, Marvin J. Caughman, Assistant United States Attor-
ney, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case arises from an extensive drug distribution ring operating
out of Miami, Florida. Beginning sometime in the mid-1980's Albert
Nelson, Jr., and other individuals began distributing cocaine to vari-
ous purchasers up and down the east coast. In 1990 Nelson was con-
victed of drug conspiracy charges in the Southern District of Georgia
for his drug activities in the Savannah, Georgia area between 1984
through 1989. In 1995, Nelson, Elmore Moncrieft, and others were
indicted in the District of South Carolina on drug conspiracy and
money laundering charges for activities occurring in South Carolina
between 1988 and 1995. After Nelson's unsuccessful attempt to have
the South Carolina indictment dismissed under the Double Jeopardy
Clause of the Fifth Amendment, see United States v. Nelson, No. 95-
5706, 1996 WL 460280 (4th Cir., Aug. 14, 1996) (unpublished), he
and Moncrieft were convicted of conspiracy to distribute cocaine,

2

crack cocaine, and marijuana, and conspiracy to launder drug proceeds in violation of 18 U.S.C. §§ 371, 846 (1994). This appeal followed. Finding no merit to the numerous claims raised on appeal, we affirm.

Nelson and Moncrieft both contend that the government presented insufficient evidence to sustain their convictions. To sustain a conviction, this court must find that the evidence, when viewed in a light most favorable to the government, was sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir. 1993). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts proven to those sought to be established. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

At trial the government presented evidence that Nelson used couriers to deliver large quantities of cocaine to various purchasers in South Carolina, Atlanta, and Philadelphia. The couriers would then return to Florida and give Nelson the cash proceeds from the drug sales. Richard Williams testified that while working for Nelson he delivered cocaine to Moncrieft at his South Carolina ranch on at least thirty separate occasions. During one delivery Williams telephoned Nelson from Moncrieft's ranch and had Moncrieft speak directly with Nelson about purchasing eight instead of five kilograms of cocaine. There was also evidence that on one occasion Nelson personally accompanied Mark Sears in delivering cocaine to Moncrieft's ranch. Viewing this evidence in a light most favorable to the government, we find that there was sufficient evidence from which a reasonable jury could have found that Moncrieft and Nelson conspired to distribute cocaine.[1]

_____

[1] While Delroy Beckford was not named in the indictment as a coconspirator or otherwise, unless included as an unindicted coconspirator or an unknown other person, we note that Beckford testified for the government at the trial as to various drug transactions between himself and Moncrieft. So there is ample evidence to sustain any implicit conviction for the possession of crack by Moncrieft as coming from Beckford, as there is for such a conspiracy. So far as Nelson may be said to have adopted Moncrieft's argument, that argument is likewise without merit.

3

Nelson also asserts that there was insufficient evidence to sustain his money laundering conviction. To sustain Nelson's conviction for conspiracy to launder monetary instruments, the government must prove that Nelson and another coconspirator agreed to structure a financial transaction knowingly involving the proceeds of an unlawful activity, to conceal the nature of the proceeds or to avoid reporting. See United States v. Heater, 63 F.3d 311, 318-19 (4th Cir. 1995). Nelson alleges that his money laundering conviction can not stand because the government failed to present sufficient evidence that he engaged in a "financial transaction" within the meaning of the money laundering statute in the state of South Carolina. The short answer to Nelson's claim is that the government is not required to prove as an element of conspiracy to launder drug proceeds that Nelson laundered drug money in South Carolina.[2] The evidence adduced at trial showed that Nelson obtained hundreds of thousands of dollars from the sale of cocaine and marijuana, and with the help of Ira Bowers used this drug money to purchase between fifteen and twenty properties, including thoroughbred horse farms in Kentucky and Florida and rental properties in the Miami area. Thus the record contains evidence more than ample to support the jury's conclusion that Nelson engaged in a conspiracy to violate the federal money laundering laws.

Nelson next contends that the district court erred in denying his motion for acquittal based on his alleged withdrawal from the conspiracy. A defendant claiming abandonment or withdrawal in a criminal conspiracy bears the burden of producing evidence that he acted affirmatively to defeat or disavow the purpose of the conspiracy. If the evidence of withdrawal is ambiguous or in dispute, as here, the issue is one for the jury. See United States v. Urbanik, 801 F.2d 692, 697 (4th Cir. 1986); United States v. Wooten, 688 F.2d 941, 946 (4th Cir. 1982). Nelson testified at trial that he informed his coconspirators that he was withdrawing from the drug distribution conspiracy in Feb-

_____

**2** Nelson does not dispute that South Carolina was a proper venue for this conspiracy charge. Had he made such an assertion, the government would have been obligated to show that an overt act in furtherance of the conspiracy occurred in South Carolina. See United States v. Cabrales, ___ U.S. ___, 66 U.S.L.W. 4423, 4423 (U.S. June 1, 1998). We note, however, that the transportation of funds from South Carolina to Florida made South Carolina a proper venue. See id. at 4425.

4

ruary 1990, one month prior to his arrest on conspiracy charges in the Southern District of Georgia. As further evidence of his alleged withdrawal he notes that in February 1990 he began providing substantial assistance to law enforcement officials investigating his drug distribution activities. Contrary to Nelson's assertion, however, the government presented evidence that he maintained his involvement in the drug business after 1990. Richard Williams testified that prior to Nelson's arrest in 1990 Nelson told him that James Hanks would be taking over the distribution operation. The government also presented evidence that while Nelson was incarcerated he made numerous phone calls to Hanks. Finally, Drug Enforcement Agent Darryle Snider testified that Nelson withheld information about the scope of his drug activities at the time of his arrest in 1990. From this evidence we believe a jury could reasonably find that Nelson continued his drug distribution activities following his 1990 arrest. Accordingly, we find that the district court correctly let the jury determine whether Nelson withdrew from the conspiracy in 1990.

Nelson's next three claims deal with his prior conviction for drug conspiracy charges in the Southern District of Georgia. First, he contends that the district court erred in allowing the introduction of evidence about his drug activities in the State of Georgia. A district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion. United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994). The district court permitted the government to introduce evidence relating to Nelson's past conviction in Georgia under Federal Rule of Evidence 404(b).**3** The Court explicitly cautioned the government to minimize the presentation of testimony about Nelson's criminal activities in Georgia, and repeatedly instructed the jury that the Georgia conviction was a separate matter that could not be considered as proof of his guilt for the charged offenses. While we recognize, as did the district court, that at times the government may have overstepped its bounds in presenting this evidence, we find that the evidence was properly admitted

_____

**3** Rule 404(b) provides that evidence of other crimes, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but is admissible for other purposes such as to prove motive, opportunity, intent, preparation, plan or knowledge. See Fed. R. Evid. 404(b).

5

under Rule 404(b). To the extent that the amount of evidence introduced with respect to Nelson's Georgia drug activities may have prejudiced him, we find any error in the admission of this evidence was rendered harmless by the overwhelming evidence of Nelson's guilt and the numerous limiting instructions the district court gave the jury. See United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997) (finding error is harmless so long as we can say with fair assurance that the judgment was not substantially swayed by the error).

Nelson next urges this Court to reconsider its prior determination that Nelson's drug activities resulting in his 1990 conviction in the Southern District of Georgia were not part of the same conspiracy for which he was convicted in this case. The law of the case doctrine dictates that this court follow its previous decision rejecting Nelson's double jeopardy claim unless: (1) substantially different evidence was produced at trial; (2) controlling authority has since made a contrary decision of law applicable to the issue; or (3) our prior decision was clearly erroneous and would work manifest injustice. See Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988). Having reviewed the record, we find that the evidence adduced at trial was not substantially different from the activity alleged in Nelson's indictment. The references at trial to Nelson's drug activities in Georgia were merely incidental to the testimony about the broader drug distribution operation for which he was on trial. Therefore, we find no reason to revisit our prior determination that the government did not charge Nelson with the same offense twice within the meaning of the Double Jeopardy Clause.

Nelson also contends that the district court erred in refusing to submit to the jury the issue of whether his Georgia drug activities were part of the same conspiracy charged in this case. This court reviews a district court's refusal to give a requested jury instruction for an abuse of discretion. See United States v. Russell, 971 F.2d 1098, 1107 (4th Cir. 1992). In rejecting Nelson's request to submit the issue to the jury, the district court recognized that the law of the case required it to abide by this court's determination that Nelson's activities constituted two separate conspiracies. Accordingly, we find no abuse of discretion in the district court's refusal to give Nelson's requested instruction.

6

Nelson next alleges that the government improperly used information in his prosecution that it obtained from him as part of his plea agreement in the Southern District of Georgia. Specifically, he contends that FBI Agent James Skrak obtained DEA records from Nelson's Georgia conviction to locate and convince Richard Williams to cooperate in the government's investigation in this case. Hence he asserts that the district court should have stricken Williams' testimony because it was obtained in violation of his earlier plea agreement, and without Williams' testimony there was insufficient evidence to sustain his conviction.

While it is true that evidence initially obtained unlawfully may be admissible if later acquired through a lawful, independent source, see Murray v. United States, 487 U.S. 533, 537 (1988), we find that the government did not learn of Williams' identity through unlawful means and thus the district court did not err in admitting Williams' testimony. Nelson's plea agreement in the Southern District of Georgia required him to fully and truthfully disclose to the government everything he knew about drug trafficking. The agreement also explicitly stated that if Nelson knowingly withheld evidence from government investigators then the government was entitled use any information he provided in a subsequent prosecution. In reaching our previous decision that Nelson's drug activities in Georgia constituted a separate conspiracy from the conspiracy charged in this case, we recognized that the government was alleging that Nelson had failed to disclose the full extent of his drug activities at the time of his conviction in the Southern District of Georgia. See Nelson, No. 95-5706, 1996 WL 460280 at *1. The government has now proven that Nelson ran an extensive multi-state drug distribution ring that was in operation as early as 1988, two years prior to his conviction in Georgia. Accordingly, the record convinces this court that Nelson failed to disclose to the government the full extent of his drug activities in accordance with his plea agreement in the Southern District of Georgia. Because Nelson failed to abide by the terms of that agreement, the government was not restricted by that agreement from using information obtained from Nelson in his prosecution in this case. Therefore, we find no abuse of discretion in the district court's decision to admit Williams' testimony in evidence.

7

We find no merit to Nelson's claim that the district court erred in denying his motion to dismiss for vindictive prosecution. This court reviews a district court's factual findings regarding prosecutorial misconduct for clear error, and when there are no factual findings we review such claims de novo. See United States v. McDonald, 61 F.3d 248, 253 (4th Cir. 1995). Nelson alleges that the government impermissibly retaliated against him by naming him in a third superseding indictment after he filed his interlocutory appeal challenging his indictment.**4** This court will reverse a conviction that is the result of a vindictive prosecution where the facts show an actual vindictiveness or a sufficient likelihood of vindictiveness to warrant such a presumption. See United States v. Goodwin, 457 U.S. 368, 373 (1982). Here, the prosecution ultimately elected not to go forward on the third superseding indictment. Therefore, Nelson has not demonstrated any prejudice in support of his prosecutorial misconduct claim, see generally Darden v. Wainwright, 477 U.S. 168, 181 (1986), and fails to show that his conviction was the result of a vindictive prosecution. Even if Nelson could establish that the government acted with vindictiveness in issuing the third superseding indictment, his failure to allege that this indictment had any effect upon his conviction renders his claim without merit. Finding no merit to his vindictive prosecution claim, we find no error in the district court's decision not to hold an evidentiary hearing on the issue.

Nelson asserts that a mistrial was warranted because the district court's supplemental charge to the jury mischaracterized and improperly stressed certain testimony from Agent Snider. Nelson's defense at trial was that he had withdrawn from the conspiracy before May 17, 1990, and thus the statute of limitations had run before the government obtained an indictment charging him with the conspiracy. In support of this defense Nelson called DEA Agent Snider as a witness to testify about the substantial assistance Nelson provided law enforcement officials following his arrest in the Southern District of Georgia. On cross-examination, however, the government elicited from Agent Snider that Nelson failed to disclose to Agent Snider the names of numerous individuals involved in the drug distribution conspiracy for which he was on trial. During deliberations the jury asked

_____

**4** The third superseding indictment added a Continuing Criminal Enterprise and a forfeiture allegation against Nelson.

8

the court for clarification on the law concerning the statute of limitations. The court then summarized the law concerning withdrawal from a conspiracy and added:

> In order to find Nelson not guilty based on the issue of whether before May 17th, 1990, he withdrew from the conspiracy, you must find that he totally and completely withdrew from the conspiracies before May 17th, 1990. During the trial you heard the testimony of the prosecution witnesses, including the testimony of DEA Agent Snider from Savannah Georgia, and you've also heard the testimony of the defendant, Nelson, and a couple of his witnesses on this issue. The true issue then before you becomes one of credibility. If you credit the Government witnesses and the testimony of DEA Agent Snider, you should conclude that Nelson did not totally and completely withdraw from the conspiracies in a timely and sufficient manner. On the other hand, if you credit the testimony of Nelson and a couple of his witnesses, you should find that he withdrew from the conspiracies before the statute of limitations began to run on May 17th, 1990.

(Supp. JA Vol. 1, 112-13).

A district court should respond to jury requests for supplemental instructions so as to clear up any apparent confusion without creating prejudice. United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1407 (4th Cir. 1993). We review a district court's supplemental instructions and its denial of a motion for a mistrial under an abuse of discretion standard. United States v. Horton, 921 F.2d 540, 546 (4th Cir. 1990); United States v. West , 877 F.2d 281, 287-88 (4th Cir. 1989). We do not find that the district court's supplemental instruction mischaracterized the evidence presented at trial. The court's instruction appropriately outlined the relevant law and clarified for the jury the parties' positions based on the evidence with respect to Nelson's purported withdrawal from the conspiracy. Accordingly, we find no abuse of discretion in the district court's refusal to declare a mistrial based on the supplemental instruction.

Nelson's final claim is that the district court erroneously considered for sentencing purposes cocaine he distributed in Philadelphia

9

because these drugs were not specifically charged in his indictment. He also alleges that his Georgia sentence encompassed his distribution activities in Philadelphia and thus the district court improperly sentenced him for drugs he had already been sentenced for in the Southern District of Georgia. This court reviews questions involving legal interpretations of the guidelines de novo, see United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991), and factual determinations underlying application of the guidelines for clear error. See United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989).

In determining the quantity of drugs attributable to a defendant convicted on a drug conspiracy charge, a defendant is responsible for all reasonable foreseeable drug distribution taken in furtherance of the conspiracy. See United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir. 1992) (citing United States Sentencing Guidelines Manual § 1B1.3). A sentencing court may take into account quantities of drugs that were not charged or otherwise specified in the indictment, so long as it finds, by a preponderance of the evidence, that the conduct involving the additional amounts occurred and that it was part of the same scheme or course of conduct as the counts of conviction. See United States v. Williams, 977 F.2d 866, 870 (4th Cir. 1992). Therefore, Nelson's claim that the district court incorrectly considered the cocaine he distributed in Philadelphia solely because it was not charged in the indictment is without merit. In addition, the district court's finding that Nelson had not previously been sentenced for his Philadelphia drug activities was not clearly erroneous. Hence, the district court properly considered drug amounts from Philadelphia for sentencing purposes.

Accordingly, we affirm Appellants' convictions and Nelson's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

10