## UNITED STATES of America

v.

## Patsy HENSLEY, Defendant.

### No. 2:04 CR 10081.

United States District Court, W.D. Virginia, Big Stone Gap Division.

March 29, 2005.

Randy Ramseyer, Assistant United States Attorney, Abingdon, VA, for United States.

H. Ronnie Montgomery, Jonesville, VA, for Defendant.

## OPINION SETTING FORTH REASONS FOR SENTENCE

JONES, Chief Judge.

For the reasons set forth in this opinion, I find it reasonable to sentence the defendant to 12 months imprisonment—a sentence below the advisory guideline range.

Patsy Hensley and Joey Britton were charged in a multiple-count indictment with drug and firearms offenses by a grand jury of this court. The investigation arose when a confidential informant told police that he had purchased methamphetamine from Hensley and Britton. A search warrant was obtained and on December 29, 2003, a search was conducted of a mobile home used by the defendants. Police seized 2.3 grams of methamphetamine and $1,970 in cash from Britton's pockets. They found another 55 grams of methamphetamine elsewhere in the mobile home, as well as a firearm and drug trafficking paraphernalia such as digital scales and plastic baggies.

The defendants were charged with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, as well as the substantive offense of possession with intent to distribute 50 grams or more of methamphetamine. 21 U.S.C.A.

§§ 841(a)(1), 846 (West 1999). Both were also charged with possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C.A. § 924(c) (West 2000). Hensley was additionally charged with maintaining a place for the manufacture of methamphetamine, 21 U.S.C.A. § 856(a)(1) (West Supp.2004), and with possession of a firearm while being an unlawful user of a controlled substance, 18 U.S.C.A. § 922(g)(3) (West 2000).

On December 6, 2004, Britton pleaded guilty pursuant to a written plea agreement to the lesser-included offense of possession with intent to distribute 2.3 grams of methamphetamine. In Britton's plea agreement, the parties stipulated that Britton would have a Base Offense Level determined by section 2D1.1(c)(14) of the U.S. Sentencing Guidelines Manual (2004). On December 20, 2004, Hensley pleaded guilty pursuant to a written plea agreement to engaging in a conspiracy to possess with intent to distribute 50 grams or more of methamphetamine.[1]

A presentence investigation report ("PSR") was prepared as to each defendant. In the PSRs, the probation officer calculated the defendants' guideline ranges under the Sentencing Guidelines. Based on his plea agreement, Britton was determined to have a Total Offense Level of 8, with a Criminal History Category of I, for a sentencing range of zero to six months imprisonment. On the other hand, Hensley was determined to have a Total Offense Level of 21, with a Criminal History Category of I, for a sentencing range of 37 to 46 months imprisonment.[2]

Based on the information contained in the PSRs and the testimony of Hensley presented at the sentencing hearing, it is clear that both Hensley and Britton were equally culpable in the drug trafficking conspiracy. Hensley lived with her mother and her two-year-old child in Harrogate, Tennessee, but on occasion used the mobile home, which was owned by her family and located in nearby Lee County, Virginia, as a "party house." While Hensley thus had a more formal connection with the locus of the drug trafficking, it not disputed that Britton, a slightly older man, was as deeply involved as she in the illegal conduct.

In addition, both defendants have comparable relevant life histories. Neither have any prior criminal convictions other than minor traffic offenses, and both had a Criminal History Category of I under the Sentencing Guidelines. They have a history of drug abuse, both having used methamphetamine off and on for over ten years. Neither is married, although Hensley has a small child, and both have a high school education and a regular work history. Hensley is 38 and Britton is 43 years old.

The government's explanation for the favorable plea agreement given to Britton is that initially Hensley denied any knowledge of drug trafficking, and that Britton's agreement had been arrived at before Hensley decided to negotiate a plea. While the court had not accepted Britton's guilty plea at the time Hensley agreed to

---

1. Hensley's plea agreement was actually dated and filed on December 9, 2004, three days after Britton's.

2. The 2.3 grams of methamphetamine found on Britton translated into a Base Offense Level of 8. *See* U.S. Sentencing Guidelines Manual § 2D1.1(c)(14) (2004). The 55 grams otherwise found in the house were attributed to

Hensley, and produced a Base Offense Level of 26. *See id.* § 2D1.1(c)(7). Since both defendants met the criteria of the so-called "safety valve" provision, their offense levels were adjusted downward two levels each. *See id.* § 2D1.1(b)(7). They also both received full credit for acceptance of responsibility. *See id.* § 3E1.1.

enter a plea, the prosecutor felt that it would be improper to withdraw the favorable offer to Britton because prior to Hensley's decision to enter a plea, the government needed Britton's testimony to convict her.

I do not question the government's plea decisions. Hensley, either though her own ignorance or inadequate advice, delayed in engaging in plea negotiations. In most drug conspiracy prosecutions in federal court, the race goes to the swift. The first defendant past the finish line who agrees to cooperate gets the prize of favorable treatment, while those who hesitate find that they are left with nothing to bargain over. In light of the system as it operates in practice, I do not fault the government with bad faith in its plea negotiations in this case.

■ Even though a principal purpose of the Sentencing Reform Act of 1984 and the resulting Sentencing Guidelines was to reduce disparity in sentencing in the federal courts, disparity between codefendants is not a permissible ground for a downward departure from the guideline range under the Sentencing Guidelines, absent a showing of prosecutorial misconduct. *See United States v. Ellis,* 975 F.2d 1061, 1066 (4th Cir.1992). The larger goal of reducing national disparity among sentences, it was held, trumps any effort to address disparity in a particular case. *See United States v. Withers,* 100 F.3d 1142, 1149 (4th Cir. 1996).

■ In *United States v. Booker,* —— U.S. ——, ——, 125 S.Ct. 738, 767, 160 L.Ed.2d 621 (2005), the Supreme Court held that the Sentencing Guidelines are not mandatory, although a sentencing court is still obligated to "consult those Guidelines and take them into account," along with the sentencing factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp.2004). Accordingly, I am no longer prohibited from considering the disparity between codefendants in fashioning a reasonable sentence. In light of the similar conduct of the defendants here, and their similar records, I find that a sentence below the guideline range is appropriate for Hensley. It is also appropriate to consider Hensley's failure to promptly admit her involvement in the drug trafficking conspiracy, and for that reason I sentenced Hensley to 12 months imprisonment, while sentencing Britton to six months imprisonment, within the guideline range agreed upon in his plea agreement.

Hensley's sentence recognizes the serious nature of her criminal conduct, but it also takes into account the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6). The normal exercise of prosecutorial discretion does not generally produce "unwarranted disparity" under § 3553(a)(6). *See United States v. LaBonte,* 520 U.S. 751, 761–62, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). However, the circumstances here allowed me to consider as part of "the need for the sentence imposed," 18 U.S.C.A. § 3553(a)(2), the sentence recommended by the government as appropriate for Hensley's codefendant.