**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-5270**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SAMUEL DAVIS BYRD,

Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Lacy H. Thornburg, District Judge.  (CR-05-10)

---

Submitted:  October 31, 2006          Decided:  December 5, 2006

---

Before WILKINSON, WILLIAMS, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

David G. Belser, BELSER & PARKE, P.A., Asheville, North Carolina, for Appellant.  Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina; Amy E. Ray, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Samuel Davis Byrd pled guilty to possession of 500 grams of cocaine with intent to distribute, 21 U.S.C. § 841(a) (2000). Because he had a prior felony drug conviction, Byrd was subject to an enhanced statutory minimum sentence of ten years. 21 U.S.C.A. §§ 841(b)(1)(B), 851 (West 1999 & Supp. 2006). Byrd appeals his ten-year sentence, contending that the district court clearly erred in determining that he did not qualify for a sentence below the mandatory minimum under the safety valve provision. U.S. Sentencing Guidelines Manual § 5C1.2 (2005). We affirm.

In December 2004, Byrd was stopped by a state trooper on the interstate in North Carolina for erratic driving. Byrd was driving a car that had been rented two days earlier in Charlotte, North Carolina, but he told the trooper he had been working in Ohio for several days. Byrd seemed nervous, but not otherwise impaired, and his story was inconsistent, so the trooper asked to search his car. When Byrd declined to give his consent, the trooper called for backup and a drug dog alerted twice on the car. In the trunk of the car, the trooper discovered four packages of cocaine with a total weight of 4.03 kilograms. After his guilty plea in May 2005, Byrd was interviewed by two federal agents in the presence of his attorney. In the presentence report, the probation officer recommended a base offense level of 30 under USSG § 2D1.1, and a

two-level reduction under § 2D1.1(b)(7),[1] noting that Byrd "appear[ed] to meet the criteria set forth in subdivisions (1) - (5) of § 5C1.2," the safety valve provision.  With a three-level adjustment for acceptance of responsibility, the final offense level was 25.  Byrd was in criminal history category I,[2] which gave him a recommended advisory guideline range of 57-71 months.  The probation officer noted that Byrd was subject to a ten-year mandatory minimum sentence, but could be sentenced below the mandatary minimum if he met the five criteria for sentencing under the safety valve provision.

Neither Byrd nor the government filed objections to the presentence report.  At the sentencing hearing, when Byrd's attorney asked the court to clarify whether Byrd qualified for a sentence under the safety valve provision, the government asserted that Byrd did not qualify because he had not given a complete and truthful statement of all information he had concerning the offense to comply with the fifth criteria.

---

[1]The probation officer cited § 2D1.1(b)(6) because he used the 2004 Guidelines Manual in preparing the presentence report.  When Byrd was sentenced in December 2005, the 2005 Guidelines Manual applied.  See USSG § 1B1.11.

[2]Byrd did not receive any criminal history points for the 1994 felony drug conviction.  The conviction was over ten years old, and Byrd's sentence of six months confinement apparently concluded more than ten years before the instant offense occurred.  See USSG § 4A1.2(e).

The government reminded the court that Byrd's offense involved his possession of four kilograms of cocaine in a bag in the trunk of his car, and that Byrd initially claimed the bag was not his, although Byrd had the key for the locked bag on his person. In his interview with the agents following his guilty plea, Byrd said he did not know who the cocaine in his trunk came from or where it was going.

The government then informed the court that Byrd was stopped on the interstate near Spartanburg, South Carolina, six months earlier, in July 2004, for driving too closely to another car. Because Byrd and the driver of the other car gave conflicting accounts of why they were traveling together, Byrd's car was searched and a bag containing $22,000 in cash was found in the trunk of his car. Byrd denied ownership or knowledge of the money.[3] The government pointed out that Byrd's conduct in the instant offense was similar.

At the court's request, Matt Barden, one of the Drug Enforcement Administration agents who had interviewed Byrd, testified. He said that Byrd told them he simply received information in a cell phone call about where to pick up the car and where to drop it off, but that "he had absolutely no idea who it was that he dropped the car off to, [or] how to get a hold of

---

[3]Byrd was not charged with any crime in connection with this incident.

them."  Barden said that was not how the dope business was conducted currently.  Barden said he and the other agent thought it highly unlikely that Byrd would be transporting four kilograms of cocaine worth about $80,000, but would be unable to provide any names (even nicknames) or telephone numbers for the people who told him to pick up the drugs or the people to whom he intended to deliver the drugs, even though Byrd possessed several cell phones and pagers when he was arrested.  Barden testified that he did not believe Byrd had provided all the information he had concerning the offense.

The district court made the following findings:

> After considering the evidence presented about the circumstances involved in the case, the stop, the amount of drugs involved, the common practice in the drug business described by the agent, the value of the drugs, the circumstances under which the defendant related to the officers how the drugs were obtained, the distances traveled and so forth, the Court finds that the defendant has not, in fact, complied with the limitation or applicability of statutory minimum sentences in certain cases set out in Section 5C1.2 . . . and as a result thereof, the sentence to be imposed is the statutory minimum of 120 months.

To qualify for a reduced sentence under § 5C1.2, a defendant must truthfully disclose to the government all information and evidence he has concerning the offense of conviction and all relevant conduct.  See 18 U.S.C.A. § 3553(f)(5) (West 2000 & Supp. 2006); USSG § 5C1.2(a)(5).  The defendant is obliged to reveal "all he knows concerning both his own involvement and that of any co-conspirators."  United States v. Ivester, 75

F.3d 182, 184 (4th Cir. 1996). Further, the defendant has the burden of showing that he has affirmatively acted to supply truthful information to the government. <u>Id.</u> at 185. The sentencing court's decision is a factual finding reviewed for clear error. <u>United States v. Wilson</u>, 114 F.3d 429, 432 (4th Cir. 1997).

Byrd argues first that the government waived its right to challenge the applicability of the safety valve provision by failing to file an objection to the presentence report, which stated that Byrd appeared to qualify for a sentence under § 5C1.2. Rule 32(f)(1) of the Federal Rules of Criminal Procedure provides that, "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements, contained in or omitted from the report."[4] Because Byrd did not raise this issue at sentencing, our review is for plain error. <u>United States v. Olano</u>, 507 U.S. 725, 732-37 (1993) (unpreserved error may be corrected only if error occurred, that was plain, and that affects substantial rights, and if failure to correct error would seriously affect the fairness, integrity, or public reputation of judicial proceedings).

The sentencing court's consideration of sentencing enhancements raised by the government in an untimely manner

---

[4]This requirement was added in a 1995 amendment to Rule 32. <u>See</u> <u>United States v. Morsley</u>, 64 F.3d 907, 914 n.4 (4th Cir. 1995).

violates Rule 32.  United States v. Soto-Beniquez, 356 F.3d 1, 52 (1st Cir. 2003).  The error may be cured if the court grants a continuance to allow the defendant to respond to the government's late objection.  Id.; see also United States v. Young, 140 F.3d 453, 457 (2d Cir. 1998) (finding no error where government asserted error four days before sentencing, district court directed preparation of revised presentence report, and parties were afforded fourteen days to object to revised presentence report); United States v. Ellis, 975 F.2d 1061, 1066 (4th Cir. 1992) (similar local rule was substantially complied with where defense counsel had notice of government's objections before sentencing). If the error is not preserved, it may not meet the test for plain error if the basis for the enhancement is so obvious that the sentencing cannot be deemed a miscarriage of justice.  Soto-Beniquez, 356 F.3d at 53 (holding that government's late argument for firearm enhancement was no surprise in light of trial testimony).

The government asserts that it did not object to the presentence report because the probation officer "stated only that Defendant 'may' be entitled to such relief [under the safety valve], leaving the final determination to the court."  Thus, "[t]here was no finding to which the Government needed to object . . . ."  In taking this position, the government ignores the fact that it did not agree with the probation officer's recommendation

that Byrd receive a two-level reduction under § 2D1.1(b)(6) because he appeared to meet the requirements set out in § 5C1.2.[5]

However, at sentencing Byrd did not ask for a continuance so that he could prepare a response or schedule another interview with the agents. Moreover, in this appeal, he does not claim that he was denied the opportunity to provide additional information that would have made him eligible for a sentence under the safety valve provision. He argues only that the government waived its objection by not making it in a timely manner and that the district court erred in considering the issue at sentencing. Therefore, while the district court's consideration of the issue violated Rule 32, and the error is plain, we conclude that it did not violate Byrd's substantial rights.

Byrd next contends that the court's findings were vague and conclusory. Rule 32(i)(3)(B) requires only that the district court rule on any disputed matter and append a copy of its determination to the presentence report. The court complied with the rule and, taken in context, considering the government's argument and the agent's testimony, the court's findings were adequate to explain its reasoning.

Principally, Byrd argues that the court's finding was clearly erroneous because the government did not prove that he had

---

[5]In addition, had the government alerted Byrd to its position before the sentencing hearing, Byrd would have had an opportunity to reconsider the statement he made to the agents.

failed to disclose specific information he possessed, but rather relied on the agent's hunch that Byrd knew more than he disclosed. The district court may base its decision concerning the truthfulness of information provided by a defendant on an agent's testimony and "its own credibility assessments." See United States v. O'Dell, 204 F.3d 829, 838 (8th Cir. 2000). The safety valve benefit may be denied if the district court determines that the defendant is not credible, see United States v. Montes, 381 F.3d 631, 636-37 (7th Cir. 2004), or if the defendant refuses to disclose the source of drugs in his possession. United States v. Gambino, 106 F.3d 1105, 1111-12 (2d Cir. 1997).

In this case, the district court heard evidence that, six months earlier, Byrd denied any knowledge of $22,000 in cash found in the trunk of his car. Upon his arrest for possession of four kilograms of cocaine discovered in the trunk of his car, he first claimed that the locked bag containing the drugs was not his, despite having the key to the bag on his key chain. The court found not credible Byrd's later claim that he knew he was transporting drugs, but did not know anyone else involved, and had no idea how to contact anyone else involved. We are satisfied that the court's determination was not clearly erroneous.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal

contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED