**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5698

DANIEL PERKINS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                            No. 95-5750

DANIEL PERKINS,
Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-95-30-A)

Argued: September 27, 1996

Decided: March 10, 1997

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Russell wrote the
opinion, in which Chief Judge Wilkinson and Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** Marvin David Miller, Alexandria, Virginia, for Appellant. Glenn Cameron Alexander, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

_____

**OPINION**

RUSSELL, Circuit Judge:

Daniel Perkins was the leader of a loose-knit group of Northern Virginia drug dealers. The Government's five-count indictment charged Perkins with conspiracy to distribute drugs and the distribution of marijuana and crack cocaine. At Perkins' bench trial in May 1995, the district court found him guilty on one count of distributing 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1).

The issues in this appeal all arise out of Perkins' sentencing. The Presentence Investigation Report determined that Perkins was responsible for distributing over 1.5 kilograms of crack cocaine, creating a base offense level of 38.[1] Perkins received a four-level upward adjustment for being an organizer or leader of a criminal activity involving five or more participants,[2] and a two-level reduction for acceptance of responsibility.[3] Perkins had two prior drug-related offenses, and he was still on probation when he committed the current offense, resulting in a criminal history category of III.[4] Based on these calculations, the applicable Sentencing Guidelines range was 360 months to life.

At the sentencing hearing, the district court declined to accept all of the recommendations in the report. The district court gave Perkins a three-level, instead of a two-level, reduction for acceptance of

_____

[1] U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (1994).
[2] Id. at § 3B1.1(a).
[3] Id. at § 3E1.1(a).
[4] Id. at § 4A1.1(c) & (d).

responsibility. In addition, the district court determined that Perkins' correct criminal history category was II. These adjustments lowered the applicable Guidelines range to 292 to 365 months.

Perkins, who is black, then argued that he should receive a downward departure from the Guidelines range for two reasons. First, a sentencing disparity exists between defendants charged with crimes involving cocaine base and defendants charged with crimes involving cocaine powder. The Sentencing Commission had recommended a reduction in this disparity, expressing concern over the fact that cocaine base prosecutions overwhelmingly involve black defendants. Second, codefendants in his case received more lenient sentences. After limited discussion, and despite verbally rejecting most of Perkins' arguments, the district court gave him a downward departure from 292 months to 240 months. The reduced sentence placed Perkins "at the top of the heap in terms of any sentencing that's occurred in the case," the district court announced, "but my sense of symmetry and justice -- and, I think, it more than satisfies any criminal justice need for that much time." The Government was not invited to respond to the announced sentence prior to the close of the hearing.

In its Findings and Reasons for Sentence Imposed, the district court offered the following justifications for its 52-month downward departure: 1) the comparatively lenient treatment given to similarly culpable codefendants; 2) the fact that most of Perkins' codefendants were white, leading to an unwarranted racial disparity in sentencing; and 3) a decreased sentence more accurately reflected Perkins' relative culpability in the conspiracy. Both Perkins and the Government appeal the district court's sentencing decisions.

I.

The purpose of the Sentencing Guidelines is to avoid reducing sentencing to a game of chance "in which the length of the sentence is determined by the draw of the judge."[5]  Accordingly, a district court may not depart from an applicable Guidelines range based on its own sense of justice.

_____

[5] United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996).

The Government argues that the district court erred in granting a downward departure. We review departures for abuse of discretion.[6] As the Supreme Court has held, however, "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point."[7] The exact question posed by this appeal is whether a sentencing disparity among codefendants, a racial disparity in sentencing among codefendants, and relative culpability in the criminal enterprise ever constitute permissible bases for departure. Hence, we are required to accord the decision of the district court little or no deference.

Under the law of this circuit, disparate sentences among codefendants is an impermissible ground for departure. [8] In support of its position, the district court discussed the lower sentence given to Rhonda Sturgill, a codefendant who pleaded to charges in state court. The district court failed to mention, however, that Sturgill had acted as a confidential informant for the Drug Enforcement Administration. In United States v. Hall, we held that nationwide uniformity in the sentencing of similar defendants is undermined when a departure is granted based on a sentence given to a codefendant,"regardless of whether the sentence was imposed in a federal or state forum."[9] In addition, the disparity cited by the district court resulted from a proper exercise of prosecutorial discretion in selecting what charges to bring against each codefendant.[10]

The racial disparity in sentencing and relative culpability bases are simply different ways of justifying the district court's desire to equate Perkins' sentence with those of his codefendants. Nonetheless, we will address them as independent grounds for departure. The Sentencing Commission has determined that race can never be a basis for

_____

6 Koon v. United States, 116 S.Ct. 2035, 2046 (1996).
7 Id. at 2047.

8 United States v. Ellis, 975 F.2d 1061, 1066 (4th Cir. 1992). See also Withers, 100 F.3d at 1149 n.3 (reaffirming holding of Ellis and noting unanimous agreement among circuits which have addressed issue).
9 977 F.2d 861, 864 (4th Cir. 1992).
10 United States v. Piche, 981 F.2d 706, 719 (4th Cir. 1992).

4

departure.[11] The district court not only violated the Sentencing Guidelines by granting a downward departure based on a racial disparity in sentencing, but also ignored the non-racial reasons why Perkins should receive the highest Guidelines sentence. In particular, Perkins was the only codefendant to go to trial, he had a prior criminal record, he sold more illegal drugs than anyone else in the group, and he was determined to be a leader in the enterprise.

Finally, it is axiomatic that a proper application of the Sentencing Guidelines determines the relative culpability of a defendant for purposes of sentencing. In this case, the district court found that Perkins was a leader or organizer of the drug ring and was personally responsible for distributing over 1.5 kilograms of crack cocaine. These factors contributed to Perkins' offense level and helped determine the applicable Guidelines range. Departures based on "relative culpability" would allow district courts to ignore their own factual determinations.

None of the grounds cited by the district court constitute permissible bases for a downward departure. The district court's abuse of discretion would normally require us to vacate Perkins' sentence.[12]

II.

Perkins argues that by failing to object to the downward departure at the sentencing hearing, however, the Government gave up its right to appeal the district court's abuse of discretion. This circuit has adopted the "accepted rule of appellate procedure that ordinarily an appellate court will not consider an issue not raised in the court from which the appeal is taken."[13] Therefore, absent plain error, the failure to object to a sentencing issue acts as a waiver. [14]

_____

[11] U.S. Sentencing Guidelines Manual § 5H1.10, p.s. (1995); United States v. Rybicki, 96 F.3d 754, 757 (4th Cir. 1996).
[12] Koon, 116 S.Ct. at 2047 ("A district court by definition abuses its discretion when it makes an error of law.").
[13] United States v. Davis, 954 F.2d 182, 187 (4th Cir. 1992) (citation and internal quotation omitted).
[14] Fed. R. Crim. P. 52(b); United States v. Grubb, 11 F.3d 426, 440 (4th Cir. 1993).

We are troubled by the idea that the Government's failure to offer immediate opposition to the unwarranted departure should be deemed a waiver when there was no notice that a departure might be granted on the grounds stated by the district court;[15] the grounds were not clarified at the sentencing hearing; and the hearing was closed without the Government being afforded an opportunity to respond to the sentence determination.[16] For the purpose of argument, however, we will assume that a showing of plain error is required. In order to obtain plain error review, the Government has to establish more than an abuse of discretion by the district court. According to the Supreme Court in United States v. Olano, before vacating the sentence we must be convinced that (1) an error was committed; (2) the error was plain, meaning obvious; and (3) the error affected substantial rights - in other words, the error was so prejudicial as to affect the outcome of the proceedings.[17] Once these threshold requirements are satisfied, we must also decide whether the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[18]

As evidenced by our discussion in Section I, the district court's downward departure was plain error. This circuit has held that a defendant can meet the Olano conditions if he challenges, for the first time on appeal, an illegal sentence that increases the length of incarceration.[19] However, we have not previously addressed whether the government can meet the Olano conditions if it challenges, for the first time on appeal, an illegal sentence that decreases the length of incarceration. A minor circuit split has developed over the issue, with earlier cases applying a "manifest injustice" standard used prior to Olano. The Fifth and Eighth Circuits have refused to correct plain

---

[15] See United States v. Muzika, 986 F.2d 1050, 1055 (7th Cir. 1993) (no waiver because district court failed to give government adequate notice); United States v. Alba, 933 F.2d 1117, 1120 (2nd Cir. 1991) (same).

[16] See United States v. Hickey, 917 F.2d 901, 906 (6th Cir. 1990) (no waiver because government did not have opportunity to object following sentencing).

[17] 507 U.S. 725, 732-37 (1993); United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1995).

[18] Olano, 507 U.S. at 736 (internal quotation marks omitted; alteration in the original); United States v. Lockhart, 58 F.3d 86, 88 (4th Cir. 1995).

[19] United States v. Ford, 88 F.3d 1350, 1355-56 (4th Cir. 1996).

6

error based on an appeal by the government of a sentencing issue, noting that allowing the illegal sentences to stand would not result in manifest injustice.[20] The First, Sixth, Tenth, and D.C. Circuits, however, have stated that the government can obtain plain error review.[21]

In United States v. Rodriguez, the First Circuit held that the imposition of a sentence below the statutory minimum affected substantial rights and remanded the case for resentencing.[22] The court could "discern no principled basis for restricting access to `plain error' review of an illegal sentence" to defendants.[23] The Sixth Circuit, in United States v. Barajas-Nunez, applied the Olano conditions and agreed that reviewing courts should not assume "that only defendants and never the government should be able to demonstrate that a plain error affected substantial rights."[24] The court also remanded the case for resentencing, holding that "permitting sentencing courts to disregard governing law would diminish the integrity and public reputation of the judicial system."[25]

_____

[20] United States v. Filker, 972 F.2d 240, 242 (8th Cir. 1992) (erroneous downward departure from Sentencing Guidelines); United States v. Posters 'N' Things, Ltd., 969 F.2d 652, 663 (8th Cir. 1992) (violation of statutory minimum); United States v. Ragan, 952 F.2d 1049, 1049-50 (8th Cir. 1992) (erroneous downward departure from Sentencing Guidelines); United States v. Garcia-Pillado, 898 F.2d 36, 39 (5th Cir. 1990) (violation of statutory minimum), disapproved in part on other grounds, United States v. Calverly, 37 F.3d 160, 163 (5th Cir. 1994). See also United States v. Prichett, 898 F.2d 130, 131 (11th Cir. 1990) (per curiam) (discussing waiver but failing to apply a plain error standard).
[21] United States v. Barajas-Nunez , 91 F.3d 826 (6th Cir. 1996) (erroneous downward departure from Sentencing Guidelines); United States v. Zeigler, 19 F.3d 486 (10th Cir. 1994) (change in law since original sentencing); United States v. Edelin, 996 F.2d 1238 (D.C. Cir. 1993) (erroneous downward departure from Sentencing Guidelines); United States v. Rodriguez, 938 F.2d 319 (1st Cir. 1991) (violation of statutory minimum).
[22] 938 F.2d at 322 (quoting Fed. R. Crim. P. 52(b)).

[23] Id. at 322 n.4.
[24] 91 F.3d at 833.

[25] Id.

Federal Rule of Criminal Procedure 52(b) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule draws no distinction between the government and defendants. As Justice Cardozo noted, "[J]ustice, though due to the accused, is due to the accuser also."[26] Under Olano, the government can demonstrate an effect on substantial rights if the plain error prejudiced the outcome of the proceedings. In this case, the district court's plain error allowed Perkins to receive an unwarranted 52-month reduction, "thereby affecting the substantial rights of the government and the people of the United States that this defendant be sentenced correctly in accordance with the legal principles of the Sentencing Guidelines."[27]

The bestowing of a windfall sentence reduction on an undeserving crack dealer also seriously affects the fairness, integrity, and public reputation of judicial proceedings.[28] The district court was obligated to properly apply the Sentencing Guidelines. Instead, it chose to frustrate the Guidelines' goal of national sentencing uniformity by granting a downward departure based on its own "sense of symmetry and justice." We strongly disapprove of the district court's actions and exercise our discretion to correct the plain error.

III.

Not content with the overly generous findings of the district court, Perkins attempts to reduce his sentence even further. First, Perkins contends that the district court erred in giving him an upward adjustment in his offense level based on his role as an organizer or leader of the criminal activity. We review role in the offense adjustments for clear error.[29] According to Perkins, he only had a buyer/seller relationship with his codefendants. The record in this case, however, includes evidence that Perkins directed the activities of other members of the drug ring and facilitated the criminal enterprise by renting

_____

**26** Snyder v. Massachusetts, 291 U.S. 97, 122 (1934).
**27** Barajas-Nunez, 91 F.3d at 833.
**28** Filker, 972 F.2d at 242-43 (Fagg, J., dissenting).
**29** Withers, 100 F.3d at 1147 (citing United States v. White, 875 F.2d 427, 431 (4th Cir. 1989)).

apartments, acquiring pagers, hiring a lawyer for a codefendant, and paying for the bond of another codefendant. The district court correctly determined that Perkins was an organizer or leader.

Second, Perkins argues that the cocaine base penalty provision in 21 U.S.C. § 841(b) is void for vagueness because Congress failed to define "cocaine base" in the statute. We have consistently rejected due process challenges to § 841(b). In United States v. Pinto we held "that for the purposes of section 841, the term `cocaine base' includes cocaine freebase, commonly referred to as crack."[30] Any vagueness inherent in the statute does not rise to the level of a constitutional violation.

Finally, Perkins claims that the cocaine base penalty provision violates equal protection. For the purpose of sentencing, one unit of cocaine base is equated with one hundred units of cocaine powder.[31] Depending on the exact quantity of drugs involved, the mandatory minimum penalties and the Sentencing Guidelines require prison terms for cocaine base defendants that range from three to almost eight times longer than for defendants with equivalent amounts of cocaine powder.[32] Perkins argues that this sentencing disparity violates equal protection because whites are more frequently convicted of offenses involving cocaine powder, while blacks are more frequently convicted of offenses involving cocaine base.[33]

We have repeatedly held that the sentencing disparity between cocaine powder and cocaine base does not give rise to an equal protection claim.[34] While acknowledging our decisions, Perkins urges us to reconsider in light of a 1995 report by the United States Sentencing Commission showing that over eighty percent of those convicted for

_____

[30] 905 F.2d 47, 50 (4th Cir. 1990). See also United States v. Wallace, 22 F.3d 84, 88 (4th Cir. 1994) (expressly rejecting void for vagueness challenge and citing Pinto).
[31] 21 U.S.C. § 841(b)(1)(A)(i) & (iii) (1994).
[32] United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy, 145 (1995).

[33] Id. at 156.
[34] See, e.g., United States v. Fisher, 58 F.3d 96, 99-100 (4th Cir.), cert. denied, 116 S.Ct. 329 (1995) (citing other Fourth Circuit cases for same proposition).

9

cocaine base trafficking or possession are black. **35** The report includes the results of a National Household Survey on Drug Abuse indicating that blacks constitute a much lower percentage of cocaine base users.**36** The fact that the statute does not have a uniform racial impact, however, is not enough to establish an equal protection violation. Even after the release of the Sentencing Commission report, this court reaffirmed that § 841(b) is facially neutral, is not being applied in a discriminatory manner, and there is no evidence that a discriminatory purpose motivated Congress to pass the statute. **37** Perkins fails to counter these findings. Absent such a showing, § 841(b) is examined under the rational basis test. As we found in United States v. Thomas, "Congress could rationally have concluded that distribution of cocaine base is a greater menace to society than distribution of cocaine powder and warranted greater penalties. . . ."**38** Perkins is unable to establish a claim.

IV.

For the foregoing reasons, we reject Perkins' claims.**39** In addition, Perkins' unwarranted downward departure is vacated and the case is remanded to the district court for resentencing within the applicable Guidelines range of 292 to 365 months.

VACATED AND REMANDED
_____

**35** Cocaine and Federal Sentencing Policy at 156.
**36** Id. at 39. The survey did not include the homeless, prisoners, and those in residential drug treatment. Furthermore, there is no statistical data on the demographic breakdown of cocaine traffickers. Id. at 31-2.

**37** United States v. Burgos, 94 F.3d 849, 877 (4th Cir. 1996) (en banc) (citing United States v. D'Anjou, 16 F.3d 604, 612 (4th Cir. 1994)), petition for cert. filed, (U.S. Nov. 21, 1996) (No. 96-6868).

**38** 900 F.2d 37, 39-40 (4th Cir. 1990). See also United States v. Hayden, 85 F.3d 153, 157-58 (4th Cir. 1996) (reaffirming holding of Thomas and noting agreement of "many other circuits").

**39** After the filing with the Clerk of the opinion herein, the panel received from the Clerk a petition of the defendant for leave to file a supplemental brief. We have reviewed the supplemental brief, and we find nothing in it that would affect or change in any way our opinion. Therefore, we dismiss the motion.

10