**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 99-4440

GUS LINES, a/k/a Vamp,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong Jr., District Judge.
(CR-98-795)

Argued: April 7, 2000

Decided: July 31, 2000

Before WILKINS and TRAXLER, Circuit Judges, and William L.
OSTEEN, United States District Judge for the Middle District of
North Carolina, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Benjamin Thomas Stepp, Assistant Federal Public
Defender, Greenville, South Carolina, for Appellant. Jon Rene Josey,
United States Attorney, Greenville, South Carolina, for Appellee. **ON
BRIEF:** Harold W. Gowdy, III, Assistant United States Attorney,
Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant Gus Lines appeals his convictions and sentence for conspiracy to possess with the intent to distribute cocaine and cocaine base, see 21 U.S.C.A. § 846 (West 1999), and possession with the intent to distribute cocaine and cocaine base, see 21 U.S.C.A. § 841(a)(1) (West 1999). Specifically, Lines contends that his convictions should be reversed because the district court erroneously admitted evidence seized from his motel room, and that his sentence should be vacated because the district court incorrectly applied a three-level enhancement to his offense level pursuant to U.S. Sentencing Guidelines ("U.S.S.G.") Manual § 3B1.1 (1998). Finding no error in the district court's admission of the evidence seized from the motel room, we affirm Lines' convictions. However, we conclude that the district court erred in its application of the Guidelines and, therefore, we vacate Lines' sentence and remand for resentencing.

I.

The evidence at trial, viewed in the light most favorable to the government, see United States v. Burgos, 94 F.3d 849, 854 (4th Cir. 1996) (en banc), revealed the following facts. In September 1998, a confidential informant with the Drug Enforcement Agency ("DEA") met Lines in the Greer area of South Carolina, which is located between Greenville and Spartanburg. The two had several conversations about crack cocaine and, once an element of trust developed, Lines offered to sell the informant a quarter kilogram of crack cocaine for six thousand dollars. Lines showed the informant four or five ounces of crack cocaine to prove his ability to produce a quarter kilogram, and the two agreed to complete the deal the following day.

The next day, September 3, 1998, the informant met his assigned DEA agent at a local DEA office. The informant paged Lines at the

2

number Lines had given him, but Lines did not return the call that day. Instead, Lines returned the page the following day, at which time the informant told Lines that he needed time to get the six thousand dollars to complete the deal. The informant then returned to the DEA office, where the DEA agent set up a recorder and Lines was again paged. During the ensuing conversation, Lines told the informant that he had to "dig up" the crack cocaine, but would call later to set up a meeting point. Subsequently, Lines and the informant agreed to meet at Jumbo Sports, a local sporting goods store in Greenville County, to make the exchange.

Greenville City police and Greenville County Sheriff's deputies, working in conjunction with the DEA task force, were alerted and provided with a description of Lines and his vehicle. The officers traveled to Jumbo Sports to await Lines' arrival, while the informant remained at the DEA office. Lines arrived at Jumbo Sports a short time later, along with an accomplice, Leon Cleofoster Daniel. Daniel got out of the car and went into the sports store, while Lines backed the vehicle into a parking place in the front parking lot.

Police officers, who had correctly identified Lines and the vehicle, then converged upon the vehicle, prompting Lines to speed from the parking lot in an attempt to flee. Instead, Lines collided with an unmarked police car entering the parking lot. Apparently unharmed, Lines jumped from his vehicle and attempted to flee on foot, but a uniformed Greenville City police officer tackled him in the parking lot. Meanwhile, other members of the task force located Daniel inside the store and, during a pat down, found a package containing 224 grams (approximately eight ounces) of crack cocaine.

After apprehending Lines and Daniel, officers searched the vehicle that Lines had been driving. In the vehicle, they found a rental agreement for the vehicle in the name of Jacqueline Spivey, a receipt indicating that Jacqueline Spivey had rented room 208 of the Extended Stay America Motel in Spartanburg on September 2, 1998, and a Florida driver's license for Jacqueline Spivey. Additionally, officers located a cellular telephone and two pagers. One of the pagers matched the pager number that Lines had given the informant and showed that, in a recent page, the informant's cellular telephone number had been entered.

3

Based upon the evidence located in the vehicle, DEA and local police went to the Extended Stay America and searched the room rented to Jacqueline Spivey. The room was unoccupied at the time. Inside, the officers found men's clothing, six thousand dollars in cash hidden in a man's boot, Pyrex baking dishes containing cocaine residue, a box of plastic baggies, and a razor blade.

Lines and Daniel were subsequently indicted by the grand jury for conspiracy to possess with intent to distribute crack cocaine and for possession with intent to distribute crack cocaine. Daniel pled guilty to the conspiracy count. Lines proceeded to a trial by jury. He was ultimately convicted of both counts and sentenced to life imprisonment.

II.

A.

Lines' first challenge is to his convictions. Specifically, Lines asserts that his convictions must be reversed because the district court erroneously denied his motion to suppress the evidence law enforcement officers seized from the Extended Stay America Motel room. Lines asserts that the evidence was seized in violation of his Fourth Amendment right against unreasonable searches and seizures. We review the district court's factual findings for clear error and its legal conclusions de novo. See United States v. Rusher , 966 F.2d 868, 873 (4th Cir. 1992).

We begin with a brief review of the evidence presented at the suppression hearing. Specifically, the court heard testimony from the DEA agent involved in the search, from the manager of the motel, and from Lines. According to the DEA agent, the motel manager advised him that Jacqueline Spivey was the only registered guest in the room, and the only lawful occupant according to motel policy. The manager also told the DEA agent that he had not seen Spivey for a couple of days, that the time on the room had expired, that Spivey had not returned to pay for more time, and that he suspected that two men had been staying in the room instead of Spivey. Additionally, the DEA agent testified that the motel manager consented to the search of the room and that, after knocking and receiving no answer, they used a

4

motel key to open the door. Finally, the DEA agent testified that, based upon the manager's representation, he believed the manager had the authority to open the room to the officers for the search.

In his testimony, the motel manager confirmed that the room was rented only to Spivey, that no one else was listed on the guest card, and that he had not seen Spivey since the day she checked in. The manager did not recall telling the officers that the rental time on the room had expired, and in fact it had not expired, but he testified that two gentlemen had come to pay for the room who refused to put their names on the registration card. The motel manager further confirmed that it was his opinion that Spivey was the only registered, lawful occupant in the room and, furthermore, that he believed he had the authority to let officers into a room if the persons were not lawfully present in the room. Finally, the manager testified that he was nervous at the time of the search and that, while he could not recall whether he gave these particular officers consent to search the room, he did recall that the officers did not tamper with or damage the room to get inside.

Finally, Lines testified that he and his girlfriend, Jacqueline Spivey, checked into the Extended Stay America Motel on September 2, 1998, and that although Spivey paid for the room, their finances were intermingled. Lines denied any recollection of refusing to sign a registration card.

It is well-settled that a registered guest in a motel room has a reasonable expectation of privacy in the room and, consequently, is entitled to constitutional protection against unreasonable searches and seizures there. See Stoner v. California, 376 U.S. 483, 490 (1964); see e.g. Minnesota v. Olson, 495 U.S. 91, 96-97 (1990) (concluding that a "[defendant]'s status as an overnight guest[in a private home] is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable"). However, a defendant has no reasonable expectation of privacy in a motel room if, for example, he is no longer a lawful guest because his rental period has terminated. See United States v. Kitchens, 114 F.3d 29, 31 (4th Cir. 1997). And, even if a motel guest has a reasonable expectation of privacy in the room, "a warrantless entry is valid [if] based upon the consent of a third party whom the police, at the time of

5

entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 179 (1990).

In the instant case, it is arguable that Lines has no standing to assert that he was a lawful guest of the motel. The room was rented by his girlfriend, Jacqueline Spivey, whom the manager had not seen since check-in. The manager had instead observed two males entering and leaving the room, who had declined to register as guests in the room. It also appears undisputed that Lines paid no portion of the bill, although it would seem that he was staying as a guest in the room with Spivey's consent. However, we need not decide whether Lines had a legitimate expectation of privacy in the motel room, and therefore standing to challenge the search, because the law enforcement officers reasonably relied upon the manager's consent to search the room. Following a suppression hearing, the district court concluded that the DEA agent's testimony was credible, that the manager's testimony was also credible, but often uncertain, and that the agents had reasonably relied upon the apparent authority of the motel manager to consent to the search. We agree, and affirm the district court's denial of the motion to suppress the evidence, as well as Lines' convictions.

B.

Lines next contends that the district court erred in imposing a three-level enhancement, pursuant to U.S.S.G. § 3B1.1(b), for his participation as a "manager or supervisor" of an"otherwise extensive" criminal activity. We review the district court's determination for clear error. <u>See United States v. Perkins</u>, 108 F.3d 512, 518 (4th Cir. 1997).

Section 3B1.1 of the Sentencing Guidelines provides for increases in a defendant's offense level based upon a defendant's "Aggravating Role" in the offense as follows:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

6

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. Lines' presentence report proposed a four-level enhancement on the basis that Lines was an "organizer or leader" of a criminal activity that involved at least five participants and was "otherwise extensive." U.S.S.G. § 3B1.1(a). The government, although conceding that it could not establish that Lines' criminal activity involved five or more participants, asserted that a four-level enhancement was nevertheless proper because Lines' criminal activity was "otherwise extensive."

The district court agreed that Lines' criminal activity was "otherwise extensive," but found the evidence insufficient to warrant a finding that Lines was more than a "manager or supervisor" of this "otherwise extensive" criminal activity. Accordingly, the court imposed only a three-level enhancement under U.S.S.G. § 3B1.1(b). We agree that the evidence supports the district court's finding that Lines was a "manager or supervisor" of the criminal activity, but disagree that the evidence is sufficient to find that the criminal activity was "otherwise extensive."

We begin with the evidence of Lines' role in the conspiracy. According to the evidence presented, as well as the uncontested factual findings contained in the presentence report and adopted by the district court, Lines used his girlfriend Jacqueline Spivey, and perhaps her mother, to rent motel rooms and lease automobiles for the purpose of transporting and dealing crack cocaine in Florida and South Carolina. On at least one occasion, Lines recruited Gerald Williams to drive a rental automobile in Florida that was transporting a half kilogram of crack cocaine, and just weeks later, the informant observed Lines dealing crack cocaine in the Greer area of South Carolina. Although the informant had seen Lines in the company of a woman and another man, Lines was the one who engaged in all of the prelim-

7

inary discussions with the informant, as well as the one who ultimately set up the deal to sell the informant the quarter kilogram of crack cocaine. Similarly, on the day of his arrest, Lines recruited Daniel to "hold" the crack cocaine inside Jumbo Sports while he waited outside for the informant to show so that he could complete the deal. The DEA subsequently located numerous items and paraphernalia associated with the manufacture and distribution of crack cocaine in the motel room which had also been rented in the name of Lines' girlfriend, Jacqueline Spivey, but which appeared to the motel manager and law enforcement to have been occupied only by Lines and perhaps one additional male. Accordingly, the district court did not err in finding that Lines was a manager or supervisor of the criminal activity at issue.

We do not, however, believe this evidence sufficient to support the district court's finding that the criminal activity itself was "otherwise extensive" for purposes of the aggravating role adjustment. Under the Guidelines, a manager or supervisor of a criminal activity is to receive a three-level enhancement to his offense level if the criminal activity "involve[s] five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). But if the government fails to show that the criminal activity involved at least five participants or that it was "otherwise extensive," the defendant may receive only a two-level enhancement. U.S.S.G. § 3B1.1(c). Application Note 3 to § 3B1.1 of the Sentencing Guidelines directs that "[i]n assessing whether an organization is `otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. § 3B1.1(c), comment. (n.3). Additionally, the Guidelines recognize that

> [i]n relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of § 3B1.1(c).

U.S.S.G. § 3B1.1, Comment. In applying these guiding notes and determining whether a criminal activity is "extensive" for purposes of

8

the Guidelines, some courts have limited the inquiry to a consideration of whether a combination of the number of criminally responsible participants, and the number of unknowing participants whose services were peculiar and necessary to the scheme, combine to be the functional equivalent of five participants. See United States v. Helbling, 209 F.3d 226, 244-45 (3d Cir. 2000); United States v. Carrozzella, 105 F.3d 796, 802-04 (2d Cir. 1997). Others permit the reviewing court to "examine the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity, and duration of the scheme." United States v. Dietz, 950 F.2d 50, 53 (1st Cir. 1991).

In this case, the government conceded that it could not substantiate the participation of five or more participants in the criminal endeavor. The district court's finding that Lines was a manager or supervisor of a "large scale crack cocaine ring," J.A. 235, was based upon the evidence of participation by four persons (Lines, Spivey, Williams, and Daniel), the single drug transport incident in Florida, the relatively short duration of drug dealing in the state of South Carolina culminating in the quarter-kilogram crack deal arranged with the informant, and the drug paraphernalia found in the motel room in South Carolina. Under the circumstances, we cannot agree that this evidence substantiates a finding that Lines' criminal activity was "extensive" under any definition. Accordingly, the district court should have increased Lines' offense level only by two levels for his role in the offense. See U.S.S.G. § 3B1.1(c).

We note that adjustment of Lines' total offense level to account for this error does not change his sentencing range of 360 months to life imprisonment. Nor, for that matter, would a three-level adjustment make a difference in the ultimate range. However, we remand to the district court to allow it an opportunity to resentence in light of our determination that the criminal activity was not extensive.

III.

In summary, we conclude that the district court did not err in admitting the evidence seized from the Extended Stay America Motel room and we affirm Lines' convictions. However, we conclude that the three-level enhancement applied pursuant to U.S.S.G. § 3B1.1(b)

9

on the basis of a finding that Lines was involved in "otherwise extensive" criminal activity was erroneous and that, instead, the district court should have applied a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c). Accordingly, we vacate Lines' sentence and remand for resentencing in accordance with this opinion.

<u>AFFIRMED IN PART, VACATED IN PART,</u>
<u>AND REMANDED</u>

10