**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-4743**

─────────────

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

   v.

MARCUS GIBBS,

       Defendant - Appellant.

─────────────

Appeal from the United States District Court for the District of South Carolina, at Charleston.   Richard M. Gergel, District Judge.  (2:10-cr-01104-RMG-11)

─────────────

Argued:  October 31, 2013       Decided:  November 21, 2013

─────────────

Before DAVIS and FLOYD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────────

Affirmed by unpublished per curiam opinion.  Judge Davis wrote a separate opinion concurring in part and concurring in the judgment.

─────────────

**ARGUED:** J. Joseph Condon, Jr., North Charleston, South Carolina, for Appellant.  Nathan S. Williams, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, Peter T. Phillips, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On May 11, 2011, a federal grand jury sitting in the District of South Carolina returned a ten-count superseding indictment against thirteen people, including appellant, Marcus Gibbs (Gibbs). Gibbs was charged with: conspiracy to possess with intent to distribute five kilograms or more of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); conspiracy to commit money laundering, 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(h), and 1957 (Count Three); possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Four); possession with intent to distribute five kilograms or more of cocaine, id. §§ 841(a)(1) and 841(b)(1)(A) (Count Five); being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e) (Count Six); and possession of a firearm during and in relation to a drug trafficking crime, id. § 924(c)(1)(A)(i) (Count Seven).

Following a jury trial, Gibbs was found guilty of Count One and Counts Three through Six, but found not guilty of Count Seven. He was sentenced to a total of 360 months' imprisonment. On appeal, Gibbs challenges: (1) the district court's denial of his motions to suppress; (2) the admission of certain evidence at trial; and (3) the sentence imposed by the district court. We affirm.

- 3 -

Legal determinations underlying a district court's suppression rulings are reviewed by this court de novo, and factual findings relating to such rulings are reviewed for clear error. United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011). Because the district court denied Gibbs' motions to suppress below, we construe the evidence in the light most favorable to the government. United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008).

The district court held a suppression hearing for Gibbs on October 11, 2011. The credible evidence introduced at that hearing demonstrated as follows.

Beginning in 2010, the Drug Enforcement Administration (DEA) began an investigation into a multi-kilogram cocaine trafficking organization that operated out of Charleston, South Carolina and involved the alleged transporting of cocaine from Mexico and Atlanta to Charleston. DEA agents initiated a number of court-authorized wiretaps of several individuals involved in the organization and intercepted numerous phone calls indicating the transportation of cocaine from Mexico and Atlanta to Charleston and the transportation of cash proceeds from Charleston to Atlanta and Mexico.

On July 12, 2010, DEA agents intercepted a series of cell phone calls from targets in the cocaine trafficking organization

indicating a plan to deliver $5,000. In the course of these intercepted cell phone calls, an unidentified male, later identified as Gibbs, agreed to bring the $5,000 to the home of one of the major players in the organization, Pedro Ochoa (Ochoa). Based on these intercepted cell phone calls, a DEA agent prepared an affidavit (the Affidavit) and requested a search warrant from a United States Magistrate Judge authorizing the DEA agents to utilize Global Positioning System (GPS) monitoring on the cell phone used by Gibbs.

The GPS data on Gibbs' cell phone revealed that, on July 21, 2010, Gibbs traveled by car from Charleston to Conyers, Georgia, a town located outside of Atlanta. The GPS data also revealed that, approximately one hour after arriving in Conyers, Gibbs began to head in a direction toward Charleston. In light of the known role of Atlanta as a key location for the cocaine trafficking organization, Gibbs' recent delivery of $5,000 to Ochoa, and Gibbs' one-day trip to the Atlanta area and apparent rapid return toward Charleston, the DEA agents suspected Gibbs was transporting drugs. To keep its investigation of the organization a secret, the DEA agents contacted the City of Charleston police department and requested that a stop of Gibbs' vehicle be effected if the opportunity arose when Gibbs arrived back in Charleston.

At approximately 9:50 p.m. on July 21, 2010, Officer Thomas Bailey (Officer Bailey) of the Charleston Police Department observed Gibbs' vehicle make a "wide turn" off of Highway 17 onto Main Road. The turn was "wide enough" to "grab[]" Officer Bailey's attention. At this point, Officer Bailey began to follow Gibbs' vehicle in his patrol car. Officer Bailey saw Gibbs' vehicle "slowly drift toward the double yellow lines." Before Gibbs' vehicle crossed the yellow lines, he "quickly recorrected towards the center of the lane." These circumstances led Officer Bailey to believe that Gibbs may be driving while impaired. Consequently, a traffic stop was initiated.

Officer Bailey approached Gibbs' vehicle and asked Gibbs for his license and registration. While Gibbs was looking for these items, Officer Bailey detected the smell of burnt marijuana. Gibbs was asked if he had been smoking marijuana and he responded in the affirmative. After initially refusing to give consent, Gibbs consented to a search of the vehicle. During an initial search of the vehicle, approximately one gram of marijuana was recovered. At that point, Gibbs was placed under arrest. During a subsequent search of the vehicle pursuant to a search warrant, four cell phones, including the one Gibbs used to help arrange the delivery of the $5,000 to Ochoa, were recovered. A search of this cell phone revealed

cell phone calls and text messages between Gibbs and Ochoa and Gibbs and another major player in the organization, Augustine Pineda (Nene). Further investigation of Gibbs revealed that he was a major cocaine distributor in Charleston.

A

Gibbs argues that the DEA agents lacked probable cause to seek the issuance of a search warrant authorizing the GPS monitoring of his cell phone.

Subject to certain exceptions that are not applicable in this case, police officers must obtain a warrant to conduct a search or seizure. U.S. Const. amend IV; United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010). An affidavit supporting a warrant that authorizes a search or seizure "must provide the magistrate with a substantial basis for determining the existence of probable cause" in light of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 239 (1983). "[T]o establish probable cause, the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (per curiam) (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). On appeal, we give "[g]reat deference . . . [to] a magistrate's assessment of the facts when making a determination of probable cause." Williams, 974 F.2d at 481.

In this case, probable cause supported the issuance of a search warrant authorizing the GPS monitoring of Gibbs' cell phone. The Affidavit sets forth with sufficient particularity the evidence uncovered by the DEA agents concerning the extensive drug dealing activities of Ochoa and Nene, among others. The Affidavit also recounted Gibbs' role concerning the delivery of $5,000 to Ochoa. The Affidavit established that the use of GPS monitoring would likely reveal information about the nature and extent of the cocaine trafficking organization, including the location of drugs and/or drug proceeds. We hold that the Affidavit provided the necessary probable cause to allow for GPS monitoring of Gibbs' cell phone. See Gates, 462 U.S. at 238-39 ("And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed.") (citation and internal quotation marks omitted) (alteration in original). In so holding, we note that the DEA agents were not seeking to go on a fishing expedition, because the search warrant itself contained a thirty-day time limitation, the place searched was a cell phone, and the item to be seized was the location information emitted from that cell phone.

B

Gibbs next argues that the traffic stop was improper because there was no reasonable suspicion to support the stop.

- 8 -

A traffic stop, whether based on probable cause or reasonable suspicion, must be reviewed under the standard set forth in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011). Under this standard, a police officer's decision to stop a vehicle must be "justified at its inception," and "the police officer's subsequent actions [must be] reasonably related in scope to the circumstances that justified the stop." Id.

"[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). A traffic stop also is constitutionally permissible when the police officer has a reasonable suspicion, based on specific and articulable facts, to believe that "criminal activity may be afoot." Terry, 392 U.S. at 30. Thus, a Fourth Amendment violation occurs where "there is neither probable cause to believe nor reasonable suspicion that the car is being driven contrary to the laws governing the operation of motor vehicles or that either the car or any of its occupants is subject to seizure or detention in connection with the violation of any other applicable law." Delaware v. Prouse, 440 U.S. 648, 650 (1979). Whether probable cause or reasonable suspicion exists to justify a traffic stop is determined by examining the evidence under the totality of the circumstances. United States

v. Sowards, 690 F.3d 583, 588 (4th Cir. 2012) (probable cause); United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011) (reasonable suspicion).

In this case, the stop of Gibbs' vehicle was supported by reasonable suspicion that Gibbs was driving while impaired. Gibbs made a wide turn onto Main Road and then proceeded to drift slowly toward the double yellow lines before quickly "recorrecting" the vehicle to the center of the lane. Such erratic driving could not be excused on account of either poor road or poor weather conditions. Under such circumstances, a stop of the vehicle for further investigation was justified. Cf. Gaddis ex rel. Gaddis v. Redford Twp., 364 F.3d 763, 771 (6th Cir. 2004) (finding reasonable suspicion where defendant "weaved twice to the left to touch the dividing line in a fairly short span" and "was leaning over to the right inside his car"); United States v. Ozbirn, 189 F.3d 1194, 1199 (10th Cir. 1999) (finding reasonable suspicion when defendant's motor home "drift[ed] onto the shoulder twice within a quarter mile without any adverse circumstances like road or weather conditions to excuse or explain the deviation").

In any event, Officer Bailey also had reasonable suspicion that Gibbs was involved in the transportation of drugs. Such reasonable suspicion was supported by the following facts: (1) Officer Bailey had been made aware of the extensive cocaine

- 10 -

trafficking organization and Gibbs' role in it (as known at that time); (2) Officer Bailey knew the significance of Atlanta to the organization; and (3) on the day of the stop, Gibbs had just driven to the Atlanta area from Charleston, stayed in the Atlanta area for less than an hour, and was returning to Charleston. Under these circumstances, a traffic stop for further investigation into the distribution of drugs was justified. See United States v. Arvizu, 534 U.S. 266, 273 (2002) (noting that reasonable suspicion requires a police officer to have a "particularized and objective basis for suspecting legal wrongdoing" based on the totality of the circumstances and that police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (citation and internal quotation marks omitted). Accordingly, Gibbs' challenge to the traffic stop must be rejected.[1]

---

[1] Once Officer Bailey smelled marijuana, he was permitted to arrest Gibbs. See Maryland v. Pringle, 540 U.S. 366, 370 (2003) (noting that, under the Fourth Amendment, if supported by probable cause, an officer may make a warrantless arrest of an individual in a public place). Because Gibbs' arrest was lawful, the seizure and search of his cell phones was lawful as well. See United States v. Murphy, 552 F.3d 405, 411 (4th Cir. 2009) (holding that officers may seize cell phones incident to an arrest and retrieve text messages and other information without a search warrant). We note, however, the DEA agents prudently obtained a search warrant to search the cell phones.

We review the district court's decision to admit a particular item of evidence for an abuse of discretion. United States v. Lighty, 616 F.3d 321, 351 (4th Cir. 2010); United States v. Young, 248 F.3d 260, 266 (4th Cir. 2001).

Gibbs argues that the district court abused its discretion by admitting prejudicial "other crimes" evidence. The facts surrounding this argument are as follows.

During the trial, several individuals who were not charged in the superseding indictment testified concerning Gibbs' extensive drug dealing activities. In particular, Nene's nephew, Timothy Maldonado (Maldonado), testified that, in late 2005 or early 2006, he started working for Nene as a translator. His responsibilities increased some time in 2006 when he began to receive money from Gibbs as part of Gibbs' cocaine purchases from Nene. At Nene's direction, Gibbs delivered the money to Maldonado at an apartment in Atlanta, and, once the money was counted, Gibbs would travel to another location in Atlanta to pick up the cocaine. Maldonado testified that, during an eighteen-month stretch between 2006 and 2008, Gibbs purchased twenty-eight kilograms per month. Maldonado also testified that, some time in 2007, he sold Gibbs a gun that was seized from Gibbs' residence at 3555 Woodbridge Drive in Charleston on September 1, 2010, pursuant to a search warrant.

Benjamin Jenkins (Jenkins) testified concerning how he and Gibbs secured Nene as a source of cocaine some time in 2003. Jenkins also testified concerning particular instances in which he and Gibbs purchased cocaine from Nene.

Anthony Gordon (Gordon) testified that he met Gibbs in late 2005 or early 2006. A few days after meeting Gibbs, Gordon purchased five kilograms of cocaine from him. In early 2006, Gordon sold Gibbs five to seven kilograms of cocaine. Finally, Gordon testified that he purchased three kilograms of cocaine from Gibbs in 2007.

Gibbs contends that the district court erred when it admitted portions of the testimony of Maldonado, Jenkins, and Gordon. In particular, he challenges the admission of any evidence related to events that occurred prior to January 1, 2007, the date the government alleged the cocaine conspiracy began.[2]

Rule 404(b) excludes evidence of prior bad acts offered "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) (2011). The pre-2007 evidence of dealings between Gibbs and Maldonado, Gibbs, Jenkins, and Nene, and Gibbs and Gordon was evidence of uncharged conduct that arose out of the same course of dealing

---

[2] The indictment awkwardly alleges that the cocaine conspiracy began "at least in or around January 2007."

as the charged conspiracy.  United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994).  We noted in Kennedy that evidence of activities "occurring before the charged time frame of the conspiracy does not automatically transform that evidence into 'other crimes' evidence."  Id.  Rather, evidence of prior dealings may be admissible to put the drug distribution scheme in context or to complete the story of the crime charged.  Id. at 885-86.  The challenged evidence here simply allowed the jury to understand the background of the conspiracy and the extent of the relationship and dealings between Gibbs and other relevant players in the conspiracy.  Further, the evidence was not unfairly prejudicial to Gibbs' case.  See United States v. Williams, 445 F.3d 724, 730 (4th Cir. 2006) (holding that evidence should be excluded under Rule 403 as unfairly prejudicial "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior" and the risk is "disproportionate to the probative value of the offered evidence") (citation and internal quotation marks omitted).  Thus, the district court did not err in admitting the challenged pre-2007 evidence.

III

We review sentences for procedural and substantive reasonableness under an abuse of discretion standard.  Gall v.

- 14 -

United States, 552 U.S. 38, 51 (2007). Miscalculation of the Guidelines range is a significant procedural error. Id. In assessing whether the district court has properly applied the Guidelines, we review factual findings for clear error and legal conclusions de novo. United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008). We will "find clear error only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Manigan, 592 F.3d 621, 631 (4th Cir. 2010) (citation, alteration, and internal quotation marks omitted).

In preparation for sentencing, a United States Probation Officer (the Probation Officer) prepared a presentence report. The Probation Officer found that Gibbs was accountable for 334 grams of crack and 511 kilograms of cocaine. This finding meant that Gibbs' Base Offense Level for sentencing purposes on the drug counts was 38. United States Sentencing Commission, Guidelines Manual (USSG), § 2D1.1(c)(1) (2010). Gibbs received: (1) a two-level enhancement pursuant to USSG § 2D1.1(b)(1) for possession of a dangerous weapon; (2) a four-level enhancement pursuant to USSG § 3B1.1(a) for being an organizer or leader of a criminal activity involving five or more participants or was otherwise extensive; and (3) a two-level enhancement for obstruction of justice pursuant to USSG § 3C1.1. As such, his

Total Offense Level on the drug counts was 46.[3] Coupled with a Criminal History Category of V, the Sentencing Guidelines called for an advisory sentence of life imprisonment.

At sentencing, the district court agreed with the Probation Officer's methodology in calculating Gibbs' Total Offense Level of 46 and Criminal History Category of V. After considering the factors in 18 U.S.C. § 3553, the district court sentenced Gibbs to concurrent terms of 360 months' imprisonment on the drug counts, a concurrent term of 240 months' imprisonment on the money laundering count, and a concurrent term of 120 months' imprisonment on the gun count, for a total sentence of 360 months' imprisonment.

A

Gibbs argues that the district court clearly erred in determining his base offense level by incorrectly calculating the amount of drugs attributable to him. The Probation Officer's finding that Gibbs was accountable for 334 grams of crack and 511 kilograms of cocaine was based on the following evidence.

On August 31, 2010, DEA agents, along with members of the City of Charleston Police Department, conducted a buy/bust operation using a confidential source (CS) who ordered cocaine

_____

[3] Under USSG § 3D1.2(c), the drug counts were grouped with the money laundering and gun counts for sentencing purposes.

- 16 -

from Sydney Waiters (Waiters). During the course of the operation, Waiters got into a black Ford F-350 driven by Gibbs. Tremayne Ford (Ford) was a passenger. Waiters then called the CS and told him/her to meet at an Applebee's to conduct a transaction at Gibbs' direction. At the Applebee's, Gibbs, Waiters, and Ford were arrested. At the scene, the law enforcement authorities recovered 499 grams of cocaine and a .45 caliber handgun.

As a result of the buy/bust operation, later that day, the DEA agents set up surveillance at Gibbs' home at 3555 Woodbridge Drive in Charleston. At approximately 11:00 p.m., a white Jeep Liberty arrived at the home. Richard and Leslie Ann Gaillard got out of the vehicle and went into the residence. Shortly thereafter, they left the residence pulling a wheeled cooler. After the Gaillards left the residence in the vehicle, the DEA agents effectuated a traffic stop. After consent to search was given, the DEA agents recovered approximately 459 grams of cocaine and approximately 334 grams of crack in the cooler.

The following day, the DEA agents executed a search warrant at Gibbs' residence. There, they found approximately twelve kilograms of cocaine and a firearm registered to Maldonado.

As noted earlier, during Gibbs' trial, numerous individuals testified concerning their drug dealings with Gibbs. Of note here, Maldonado testified that, during an eighteen-month stretch

between 2006 and 2008, Gibbs purchased twenty-eight kilograms per month, for a total of 504 kilograms of cocaine.

At sentencing, the government need only establish the amount of drugs involved in an offense by a preponderance of the evidence. United States v. Cook, 76 F.3d 596, 604 (4th Cir. 1996). "In determining the amount of drugs attributable to a defendant convicted of drug conspiracy, the district court may consider relevant information that is prohibited from being introduced at trial . . . . Further, the district court may attribute to the defendant the total amount of drugs involved in the conspiracy." United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999); see also United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010) ("[A] sentencing court may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy.").

In this case, the district court did not clearly err when it determined that Gibbs was accountable for 511 kilograms of cocaine and 334 grams of crack. The drug amounts found by the district court were on the conservative side, given the evidence that numerous individuals had drug dealings with Gibbs involving amounts that, when totaled, far exceeded the total drug amount found by the district court. The district court cautiously took a conservative view of the evidence to avoid any issue

concerning double counting. Nevertheless, Gibbs argues that Maldonado's testimony was not credible. The district court found Maldonado's testimony to be "very credible," and such a credibility determination is entitled to "great deference," United States v. Layton, 564 F.3d 330, 334 (4th Cir. 2009) (citation and internal quotation marks omitted). There is nothing in the record that undermines this determination.

Gibbs also argues that some of Maldonado's testimony concerning cocaine amounts related to pre-2007 conduct. However, the Sentencing Guidelines make clear that the acts and omissions for which Gibbs was accountable included all those that were "part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2). That phrase has been interpreted to be "broader than, rather than coterminous with, the definition of a 'conspiracy' as that term of art is used in the overall criminal law." David v. United States, 134 F.3d 470, 476 (1st Cir. 1998). Accordingly, "conduct can still be relevant, though it may be outside the time frame of the charged conspiracy." United States v. Barbour, 393 F.3d 82, 92 (1st Cir. 2004). There is nothing in the record to undermine the district court's relevant conduct determination. Maldonado's testimony concerning Gibbs' pre-2007 cocaine purchases related to conduct that was clearly part of

the same course of conduct as Gibbs' cocaine conspiracy conviction.

B

Gibbs argues that the district court clearly erred in enhancing his offense level four levels under USSG § 3B1.1(a) for his role in the offense. The Probation Officer's finding that Gibbs was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive was based on the following evidence.

Gibbs was responsible for coordinating the transportation of money and cocaine between Charleston, Atlanta, and Mexico. In furtherance of these responsibilities, Gibbs directly contacted Nene, his cocaine source in Mexico. Once the cocaine was transported to the Charleston area, Gibbs contacted local dealers and distributed the cocaine to them for distribution. Based on a ledger found in Gibbs' home, Gibbs fronted cocaine to numerous dealers, who in turn paid Gibbs once the cocaine was sold. At least ten dealers were listed on the ledger as owing Gibbs money.

Section 3B1.1(a) of the Sentencing Guidelines directs a district court to enhance a defendant's offense level four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). In assessing whether a

defendant played an aggravating role in the offense of conviction, "the key inquiry is whether the defendant's role was that of an organizer or leader of people, as opposed to that of a manager over the property, assets, or activities of a criminal organization."  United States v. Llamas, 599 F.3d 381, 390 (4th Cir. 2010) (citation and internal quotation marks omitted).

In this case, the district court did not clearly err when it determined that Gibbs was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.  The evidence in the record demonstrates that the cocaine conspiracy involved five or more participants and that Gibbs exercised a leadership role in it by arranging the purchase of cocaine from Nene, fronting cocaine to dealers, and controlling the flow of money.  Such evidence belies Gibbs' argument that he did not control the actions of others and amply supports the application of the USSG § 3B1.1(a) enhancement. See United States v. Jones, 356 F.3d 529, 538 (4th Cir. 2004) (affirming application of USSG § 3B1.1(a) enhancement where defendant recruited dealers, controlled allocation of drugs to dealers, determined how profits were divided, and handled the logistics and arrangements for the transactions); United States v. Perkins, 108 F.3d 512, 518 (4th Cir. 1997) (affirming application of USSG § 3B1.1(a) enhancement where defendant "directed the activities of other members of the drug ring and

facilitated the criminal enterprise by renting apartments, acquiring pagers, hiring a lawyer for a codefendant, and paying for the bond of another codefendant").

C

Finally, Gibbs argues that the district court clearly erred in enhancing his offense level two levels for obstruction of justice under USSG § 3C1.1.  The Probation Officer's finding that Gibbs obstructed justice was based on the following evidence.

Following their August 31, 2010 arrests, Gibbs asked Waiters if he would claim ownership of the cocaine found in the Ford F-350 if Gibbs agreed to claim ownership of the gun found in the truck.  As part of the deal, Gibbs would pay Waiters $10,000 and pay the cost of Waiters' attorney.

> An enhancement for obstruction of justice is proper if:
>
> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

USSG § 3C1.1.  The enhancement applies in a variety of situations including where the defendant threatens, intimidates, or otherwise unlawfully influences "a co-defendant, witness, or juror, directly or indirectly, or attempt[s] to do so."  USSG § 3C1.1 comment. (n.4(A)).

- 22 -

In this case, the district court did not clearly err when it determined that Gibbs obstructed justice. Gibbs attempted to obstruct justice by trying to convince Waiters to accept responsibility for all of the cocaine recovered in the Ford F-350 in exchange for a payment of $10,000 and for agreeing to pay for Waiters' attorney. The gist of Gibbs' argument on appeal is that Gibbs' scheme to convince Waiters to take responsibility for all of the cocaine in the truck was not obstruction of justice because the cocaine, in fact, belonged to Waiters. Obviously, the district court was free to reject Gibbs' view of the evidence and find that the cocaine belonged to Gibbs. Layton, 564 F.3d at 334.[4]

---

[4] Gibbs has also filed a Rule 28(j) letter with this court citing the Supreme Court's recent decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), where the Court held that any fact that increases the statutory mandatory minimum is an element of the offense and must be submitted to the jury and found beyond a reasonable doubt. Id. at 2155. Alleyne is of no help to Gibbs because, here, the drug weights were charged in the indictment, submitted to the jury, and found by the jury beyond a reasonable doubt, and no other sentencing factors (including any sentencing enhancements) had an impact on the statutory sentencing range applicable to Gibbs' drug offenses. See id. at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.").

IV

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

DAVIS, Circuit Judge, concurring in part and concurring in the judgment:

I concur in most of the majority opinion affirming the judgment of the district court.

I write separately to note that this Circuit's precedent is not conclusive as to whether a search of Gibbs' cell phone would exceed the scope of a permissible warrantless search on the instant facts. The majority opinion cites United States v. Murphy, 552 F.3d 405 (4th Cir. 2009), for this proposition, but Murphy presented a substantially different case than the one presented here. See ante, at 11 n.1. In Murphy, after giving police officers conflicting information about his identity while being questioned during a traffic stop, Murphy gave the police his cell phone (which was on his person), and told them about particular information on the phone that could be used to verify his identity. Id. at 408. On plain error review, we affirmed the district court's ruling, in part because the initial search of the cell phone occurred "in Murphy's presence and at his direction." Id. at 412.

Murphy is factually and legally inapposite. The question of a warrantless cell phone search is not presented here, as the investigating officers secured a valid warrant before conducting

the search.[1] Thus, it remains an open question whether the wholesale download of the contents of Gibbs' phone, including his contacts, text messages, and call history, could be effected without a warrant as a search conducted pursuant to a lawful arrest.[2]

---

[1] In addition to reciting the events of Gibbs' arrest for possession of marijuana, Officer Grill included in the warrant application the suspicious nature of having four cell phones from four different cell phone providers, with numbers in four different area codes. Cf. United States v. Vaughan, 700 F.3d 705, 712 (4th Cir. 2012) (acknowledging reasonableness of officer's suspicions arising from the presence of four cellular phones in a vehicle containing two persons).

Officer Grill stated that in his experience, drug dealers "use multiple cellular telephones with different service providers and area codes in an attempt to disguise their identity from being tracked by law enforcement officials." J.A. 99. Officer Grill also outlined the specific types of evidence that might be found on these cell phones, again based on his training and experience: communications involving illegal narcotics, including photographs, emails, text messages, address book information, call history information and financial records. This information addressing the particular suspicion around multiple cell phones, in combination with the discovery of drugs and Gibbs' admission to being in possession of marijuana, all permissibly lead to a finding of probable cause that there would be evidence of criminal activity in the cell phones.

[2] Indeed, we have acknowledged that a search of a cell phone's contents could be beyond the scope of a search incident to a lawful arrest, albeit by unpublished opinion. See United States v. Arellano, 410 F. App'x 603, 606–07 (4th Cir. 2011) (agreeing with the district court's ruling that while seizure of a phone was permissible pursuant to the defendant's arrest, turning on and using the cell phone unlawfully exceeded the scope of a permissible search). There is a split among the circuits that have confronted this issue. Compare Finley v. United States, 477 F.3d 250, 259–60 (5th Cir. 2007) (upholding search of cell phone found on defendant's person as a search (Continued)

incident to a lawful arrest), and United States v. Flores-Lopez, 670 F.3d 803, 810 (7th Cir. 2012) (same), with United States v. Wurie, 728 F.3d 1, 13 (1st Cir. 2013) (holding that "the search-incident-to-arrest exception does not authorize the warrantless search of data on a cell phone seized from an arrestee's person").